No. 22413.

F. H. Brillhart *v.* Thomas K. Hudson and Alice Loveland.

(455 P.2d 878)

Decided June 23, 1969.

MODESITT and SHAW, RICHARD H. SHAW, JOHN D. WARD, for plaintiff in error.

THOMAS K. HUDSON, ALICE LOVELAND, for defendants in error pro se.

*In Department.*

Opinion by MR. JUSTICE MOORE.*

THOMAS K. HUDSON and Alice Loveland are lawyers duly licensed to engage in the practice of law in the State of Colorado. They brought an action in the district court of Denver in which they sought to recover judgment for $20,000 against F. H. Brillhart. The complaint contained the following statement as the basis for their claim.

"2. That on or about the 16th day of October, A.D. 1962, plaintiffs were retained by defendant F. H. Brillhart to represent him in the matter of a termination of his tenancy of premises located on the second floor of 1523 Curtis Street, Denver, Colorado, and the Notice to Vacate which had been served upon him, and to negotiate a settlement of the controversy and a sale of his leasehold rights, and that the said F. H. Brillhart agreed to pay to plaintiffs for such services one-third of any monies or property recovered, whether by sale, settlement or suit."

*Retired Supreme Court Justice sitting under assignment by the Chief Justice under provisions of Article VI, Section 5(3) of the constitution of Colorado.

Also named as defendants in the action were three corporations, namely, Park Development Co., Park City Corp., and The Central Bank & Trust Company, but they were eliminated as litigants prior to the trial.

Brillhart denied all material allegations of the complaint and alleged that the only legal services authorized by him involved the defense of a threatened action for forcible entry and detainer in connection with the poolhall business operated by him at 1523 Curtis street in Denver. He alleged that the threatened eviction action was abandoned by the owner of the building. He alleged as a Fifth Defense that:

"2. The agreement (if any) referred to in the Complaint for attorneys' fees with respect to the sale of Defendant Brillhart's leasehold was entered into at such time as Plaintiffs were in fiduciary relationship with Defendant Brillhart, and Plaintiffs, as fiduciaries, were obligated to deal fairly and reasonably with said Defendant Brillhart with respect to their attorneys' fees.

"3. In breach of their said fiduciary duties, Plaintiffs caused Defendant Brillhart to enter into the fee arrangement referred to in the Complaint without advising him as to the fairness and reasonableness of their fees and without disclosing what fees were being charged by other attorneys in the Denver, Colorado area for such services.

"4. The agreement for attorneys' fees referred to in the Complaint was entered into by the Plaintiffs in breach of their fiduciary duties owed to Defendant Brillhart. Said agreement is unfair and unreasonable. Plaintiffs are entitled to recover nothing thereunder."

The pre trial conference order entered by the trial court contained the following:

"It is the belief and Finding of the Court that the fifth defense presents no material issue whatever. It is clear from the pleadings that the parties entered into a contract, if in fact they entered into any contract, for a contingent fee and were dealing at arm's length and the

fiduciary relationship is unimportant in a case of this kind; there is no count for quantum meruit; it is not a claim on an account stated nor for the reasonable value of the services; it is a claim for a contingent fee on an express contract, and therefore the fifth defense is immaterial."

The case was tried to a jury on the narrow issue as to whether Brillhart had in fact entered into a contract with Loveland and Hudson for the payment to them of a "contingent fee" under which they were entitled to receive one-third of the amount paid to him upon the sale of his leasehold to the owners of the fee title to the real estate. The plaintiffs offered evidence to the effect that through their negotiations with the owners of the real estate they reached an agreement for the sale of Brillhart's lease and equipment located upon the premises for the sum of $60,000. Brillhart refused to pay the "fee" which plaintiffs claimed to be due.

The record consists of three bound volumes containing 1512 folios. In capsule form we summarize the factual situation as follows. Brillhart had occupied the poolhall premises under a written lease for a period of five years. He had exercised his option to renew the lease for a second five-year term. In the fall of 1962, when the second term had 4½ years to run, a large scale land development program was undertaken in the immediate vicinity of the leased premises. The corporations named as defendants were attempting to acquire all property in the block to further this development, and Brillhart was asked to surrender his lease and was offered $20,000 to vacate the premises and surrender his lease to the owners who could then convey to those interested in the development. He refused the offer made by one Peter Razatos, an attorney acting for the owner, who thereafter purported to terminate the tenancy of Brillhart on the ground that gambling was taking place upon the leased premises in violation of the terms of the lease. Following the letter of "termination" of the tenancy

Razatos testified that he prepared and caused to be served upon Brillhart a ten-day notice to vacate "for violating the terms of his lease for gambling on premises, and were preparing to file what is known as an F.E.D. suit." No such suit ever was filed. Razatos himself characterized the eviction papers as follows: "The f.e.d. was just one of the items of weapons used to purchase." His employer sold the real estate to Park City Corporation on December 1, 1962, and an officer of that corporation testified that there was no intent to evict Brillhart by pursuing an f.e.d. action.

The receipt of the letter of termination of tenancy and the ten-day notice to vacate which occurred in the month of October 1962, led to the meeting between plaintiff Loveland and defendant Brillhart. There is sharp dispute in the evidence relating to that which followed between the parties concerning the extent of the employment and the fee to be paid for services rendered.

Hudson emphasized throughout his testimony that he was not concerned about the threat of eviction. He knew that Park City Corporation wanted the leasehold in order to expedite the development program. The "legal services" which were rendered by Hudson and Loveland were for the most part those which are ordinarily performed by a business chance broker. The record is uncontradicted that the established commission payable to such broker at the time was 10% of the purchase price.

In essence, Hudson's testimony was that following three meetings with Razatos and a number of conversations and conferences with a Mr. Janzen who represented Park City Corporation, he secured an offer from it to pay $60,000 to Brillhart for his leasehold and equipment, and that Brillhart accepted the offer when Hudson agreed to accept a 25% "contingent fee" for the services rendered instead of the original one-third. Hudson testified that thereafter Brillhart flatly refused to pay the contingent fee out of the $60,000 purchase price, and stated that the "$60,000 is going to be net to me." No

sale of the leasehold was consummated by Loveland or Hudson. Brillhart immediately thereafter wrote Loveland and Hudson a letter in which he advised that they would "* * * no longer represent me on any negotiations for the sale to any party of my business known as Floyds Billiards and Recreation, 1523 Curtis." It is admitted that Brillhart immediately thereafter sold his business to Park City Corporation for $50,000 plus some additional fringe benefits which were included in the package deal which Hudson claimed he had worked out.

The jury returned a verdict for the plaintiffs in the amount of $7,500. Under the instructions given the jury by the court there wasn't the slightest evidence justifying a verdict in that amount. The verdict is an indication that in the appraisal of the jurors the "contingent fee" allegedly agreed upon was unreasonable.

Several grounds for reversal of the judgment are argued by counsel for Brillhart, one of which is that the trial court erred in striking the fifth defense contained in the answer, a pertinent part of which was that the claimed "contingent fee" was unreasonable. Resolution of this assignment of error disposes of the controversy.

Canon 13 of the Canons of Professional Ethics deals with the subject of contingent fees. It provides: "A contract for a contingent fee, where sanctioned by law, should be reasonable under all the circumstances of the case including the risk and uncertainty of the compensation but should always be subject to the supervision of the court, as to its reasonableness."

In *Bryant v. Hand*, 158 Colo. 56, 404 P.2d 521, this court said with relation to the above-quoted canon: "* * * In our view, the effect of the canon is that whenever a contingent fee contract becomes a subject of litigation in the courts, the lawyer, by reason of the canon, understands that the court, under its general supervisory powers over attorneys, as officers of the courts, will determine the reasonableness of the amount and will subject it to the test of quantum meruit. This does not

mean that the court can or should remake the contract; but rather that it should determine from all the facts and circumstances the amount of time spent, the novelty of the questions of law, and the risks of non-return to the client and to the attorney in the situation."

Applying the above-quoted language to the case shown by this record, we have no hesitancy in saying that, as a matter of law, the so-called "contingent fee" contract upon which Loveland and Hudson relied was grossly unreasonable.

In the exercise of supervisory powers over attorneys as officers of this court, we cannot approve — under the guise of a "contingent fee" contract for legal services — the payment of what in fact amounts to a broker's commission of 25% of the purchase price of the leasehold interest which formed the subject matter of this controversy.

The judgment is reversed and the cause remanded with directions to determine the amount of attorneys' fees to be awarded, if any, based upon the reasonable value of any services rendered by Loveland and Hudson.

MR. CHIEF JUSTICE MCWILLIAMS, MR. JUSTICE HODGES and MR. JUSTICE KELLEY concur.