No. 20828.

MYRON E. BRYANT *v.* ROBERT JERRY HAND.
(404 P.2d 521)

Decided July 26, 1965.

SAKDOL, DITTEMORE & DOHERTY, for plaintiff in error.

THOMAS O. MILLER, JR., for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DAY.

THE validity of a contingent fee contract between an attorney and his client is the question presented by this writ of error.

We will refer to the plaintiff in error as the client and to the defendant in error as the attorney. The attorney brought suit for the unpaid portion of the contingent fee and also asking the court for specific performance of payments to be made in the future.

The judgment for the fees owed is affirmed, but the order providing for the specific performance is set aside and held for naught.

The contract provided for payment to the attorney of a sum equal to one-fourth of the amount of the fireman's pension provided by the laws of the State of Wyoming which was obtained for the client after successful suit in the Wyoming courts.

The evidence was that prior to the contract agreed upon the original proposal of the attorney was that he be paid on the basis of one-third of the amount recovered. This was rejected by the client. However, the contract providing for a contingent fee in an amount equivalent to one-fourth of the recovery was taken home by the client and discussed with his wife, who was a legal secretary. The contract was then signed and litigation soon thereafter was commenced. When the client received his pension award, he made payments of one-fourth of his pension checks monthly for a period·of one

year, but later he objected to continuing with the payments, stating that he considered it unfair to have to share with the attorney the income upon which he depended for his sustenance. He then refused to make any more payments, and the attorney thereupon brought suit.

We will discuss the five points in the summary of argument which the client urges in seeking a reversal of the judgment against him.

1. *THE CONTINGENT FEE CONTRACT SHOULD HAVE BEEN SUBJECT TO SUPERVISION OF THE COURT AS PROVIDED IN CANON NO. 13 OF THE WYOMING CANONS OF ETHICS.*

The canons to which the client refers are those proposed by the American Bar Association and adopted in Wyoming. In most instances they are the same as those promulgated by this court for the conduct of members of the Colorado bar. The contract, although entered into in Wyoming and involving a pension provided by the laws of that state, was sued upon in the district court of Arapahoe County, Colorado, because the client had moved from Wyoming and established his home in that jurisdiction.

The client would have us decree the contract void, or at least voidable, on the showing that it was entered into without the provisions of Canon 13 being complied with. The canon reads:

"A contract for a contingent fee, where sanctioned by law, should be reasonable under all the circumstances of the case including the risk and uncertainty of the compensation but should also be subject to the supervision of the court, as to its reasonableness."

[1] The canons of ethics are not binding on the courts and do not have the force of law. *Billie Sol Estes v. State of Texas,* 381 U.S. 532, 85 S. Ct. 1628, 14 L.Ed.2d 543, *reh. den.* 382 U.S. 875 S. Ct. 18, 15 L.Ed.2d 118; *In Re Hearings Concerning [Judicial] Canon 35,* 132 Colo. 591, 296 P.2d 465. Nevertheless the trial court in this case, instead of enforcing the contract under its unam-

biguous terms, did subject it to the test of reasonableness.

■■ Although we cannot ignore the place that the canons have in the conduct of an attorney with his client, nevertheless, to give the canon the interpretation as urged herein would tend to place an undue burden upon attorneys, clients, and upon the courts. In essence, it would require every contingent fee contract to be first subjected to the supervision of the courts before being finally entered into. In our view, the effect of the canon is that whenever a contingent fee contract becomes a subject of litigation in the courts, the lawyer, by reason of the canon, understands that the court, under its general supervisory powers over attorneys, as officers of the courts, will determine the reasonableness of the amount and will subject it to the test of *quantum meruit.* This does not mean that the court can or should remake the contract; but rather that it should determine from all the facts and circumstances the amount of time spent, the novelty of the questions of law, and the risks of non-return to the client and to the attorney in the situation.

It should be noted that this particular case was the first suit of its kind brought in the State of Wyoming to enforce the terms of the fireman's pension plan; and that the sum recovered was payable from month to month and involved a long period for receiving compensation for the work. Originally the client had said that he had no funds with which to pay a retainer or lump-sum fee.

2. *THE ATTORNEY DID NOT SUSTAIN THE BURDEN OF PROOF REQUIRED IN CASES OF THIS NATURE.*

■■ Because of the fiduciary nature involved in the relationship of attorney and client, the proof required to enforce payment of an attorney fee transcends that which is normally required in the ordinary contract case. The quantum of proof necessary in this type of case was stated in *Rupp v. Cool,* 147 Colo. 18, 362 P.2d 396, where-

in this court quoted with approval the following from 7 C.J.S., Attorney and Client § 204 (2):

"Where after the relationship has been established, an attorney and client enter into an agreement in reference to the attorney's compensation, * * * the burden is on him to prove that the agreement was fairly and openly made, was supported by an adequate consideration, and that he gave the client full knowledge of the facts and of his legal rights, when he entered into the agreement, and that the services to be performed were reasonably worth the amount stated in the agreement; * * * *"

██ In discussing the question of reasonableness under the canon, as well as under this contention, the court made a specific finding as follows:

"The court concludes that the contract of employment was entered into by and between the parties openly, fairly and with full knowledge of the terms and conditions thereof, and that plaintiff [attorney] was not guilty of any over-reaching or other inequitable conduct * * *." This conclusion is amply supported by the evidence. Furthermore, this finding, being supported by the evidence, under law too often stated to require citation of authority, is binding on this court.

3. *THE SHARING WITH AN ATTORNEY OF A PORTION OF A PENSION IS CONTRARY TO THE SOCIAL PURPOSES OF THE PENSION LAW.*

██ We find no merit in this contention for two reasons: first, the courts of Colorado are not in position to rule upon the public policy of the State of Wyoming; secondly, we find that the Wyoming legislature has not declared any policy in this regard in drafting the pension law under which recovery was made. In support of his argument, the client has cited the Wyoming Workmen's Compensation Act which severely limits the amount of attorney fees out of an award secured under that act. However, the evidence before the court was that the

County Attorney in Wyoming is the statutory attorney for claimants under the workmen's compensation law, and that since he derives his salary from the people, it was proper to limit the fees he could collect out of the compensation award obtained. The Wyoming legislature placed no limitation on the fees under the fireman's pension law. Had it intended to, the Wyoming legislature could have done so. The court was therefore correct in refusing to promulgate a rule of public policy in relationship to the fee claimed here.

4. *THE COURT SHOULD NOT HAVE INCLUDED IN THE JUDGMENT PAYMENTS ACCRUING AFTER THE COMMENCEMENT OF THE SUIT.*

The client grounds his argument on this point in the case of *Harms v. Harms,* 120 Colo. 212, 209 P.2d 552, wherein the court held that it was error for the court in a divorce proceeding to admit into evidence acts of cruelty which occurred after the filing of the complaint. That case is not in point and turns on an entirely different factual situation. In the Harms case a motion for a bill of particulars had been granted. Therefore, the question of notice as to the specific acts of cruelty upon which plaintiff relied was an intricate part of the case. This court, therefore, held that the failure to file supplemental pleadings to give the defendant notice of the additional acts on which plaintiff relied to prove cruelty was prejudicial. The Colorado Rules of Civil Procedure contemplates notice to the opposing party concerning that which he is expected to defend. In the instant case the attorney requested in his complaint that the court award recovery including payments accruing during the pendency of the suit. The payments were identical each month, being mathematically calculated upon one fourth of the monthly pension payment, and the client knew what these amounts were. He was not prejudiced in any manner by the calculation of these sums which accrued while he was litigating his obligation.

## 5. *SPECIFIC PERFORMANCE CANNOT BE DE-CREED TO PAY A MONEY JUDGMENT.*

The order complained of in this assignment of error reads as follows:

"It is further ORDERED that defendant shall pay to plaintiff twenty-five per cent of all amounts received by said defendant each month from the Fireman's Pension Fund of the State of Wyoming in accordance with the terms of said contract and that said payments be made immediately upon receipt of said monthly pension installments by defendant."

██ In entering the order the court commented that this was an attempt to continue jurisdiction over the client to ensure that he would continue to honor his obligation to the attorney. In this respect the court erred, and the order is therefore without force and effect. When judgment was entered it finally disposed of that phase of the litigation; and unlike a divorce proceeding the court does not continue to exercise jurisdiction over the parties to enforce future payments. The situation herein is similar to installments due under a promissory note which does not contain an acceleration clause. Under such circumstances, when default in the payment of an installment occurs, the cause of action then arises anew, and one must litigate after each installment becomes due or let the defalcation accumulate and then sue for the entire sum accrued. Of course, the question of liability having once been litigated, the law of the case is thus established and is res judicata to that extent, so that the only question before the court in each suit is the amount owed.

The order purporting to hold specific performance as to future payments is set aside and held for naught. The judgment is otherwise affirmed.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE FRANTZ concur.