CITY OF WHEAT RIDGE, Petitioner,

v.

Carl CERVENY, George J. Langdon, and
Kenneth K. Siler, Respondents.

No. 94SC521.

Supreme Court of Colorado.

April 1, 1996.

Kathryn L. Schroeder, Denver, for Petitioner.

Kevin B. Pratt, Castle Rock, for Respondents.

Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari in *Cerveny v. City of Wheat Ridge*, 888 P.2d 339 (Colo.App.1994). The petitioner, the City of Wheat Ridge (Wheat Ridge), seeks our review of the court of appeals' decision reversing the trial court's denial of an award of attorney fees to taxpayers Carl Cerveny, George J. Langdon, and Kenneth K. Siler, the respondents. The issues before us are: (1) whether an award of attorney fees is mandated under article X, section 20(1) of the Colorado Constitution (Amendment 1);[1] (2) the propriety of the court of appeals' standard of review of the trial court's determination; (3) the applicability of rule requirements to contingent fee agreements in awarding attorney fees; and (4) whether parties who do not incur attorney fees and costs are nonetheless eligible to receive an award.[2] We reverse the judgment of the court of appeals and return the case to that court with instructions to remand to the trial court for proceedings consistent with this opinion.

## I.

In March 1993, the respondents filed a civil action seeking to enjoin Wheat Ridge from proceeding with a special election on a ballot issue prior to November 1993. The respondents contended that the special election contravened the terms of Amendment 1, specifically, article X, section 20, clause 3(a) of the Colorado Constitution.[3] The respondents sought declaratory and injunctive relief and prevailed at the trial court level. Wheat Ridge did not appeal that determination.

---

1. Amendment 1 imposes procedural limitations on governmental entities with respect to revenue, spending, and debt.

2. We granted certiorari on the following issues:
   1. Whether the court of appeals erred in its interpretation of the language of Colorado Constitution, art. X, sec. 20, cl. 1, in determining that an award of attorney fees to successful plaintiffs is mandated in all actions pursuant to that constitutional provision.
   2. Whether the court of appeals erred in its interpretation of the language of Colorado Constitution, art. X, sec. 20, cl. 1, in determining that such provision is constitutional where only one party is entitled to attorney fees.
   3. Whether the court of appeals erred in its statement of, and application of, the standard on appeal for review of the trial court decision.
   4. Whether the court of appeals erred by overlooking previous precedent in determining that a trial judge may not apply statutory requirements for contingent fee agreements in determining whether to award attorney fees.
   5. Whether the court of appeals erred by a decision which will result in a windfall to plaintiffs who have not incurred attorney fees and costs, but will receive an award for such fees and costs.

   The second issue, the constitutionality of the attorney fees provision, was conceded by Wheat Ridge during oral argument. Accordingly, we do not address that issue.

3. Article X, section 20(3)(a) provides in relevant part that:

   Ballot issues shall be decided in a state general election, biennial local district election, or on the first Tuesday in November of odd-numbered years.

Thereafter, the respondents sought an award of attorney fees and costs as permitted under Amendment 1 which provides that "[s]uccessful plaintiffs are allowed costs and reasonable attorney fees."

The trial court denied the respondents' motion. In doing so, the trial court relied on its finding that the respondents were "nominal" plaintiffs, i.e., they had been solicited by Douglas Bruce and the TABOR Committee,[4] because of their status as Wheat Ridge residents and taxpayers.[5] The trial court noted that the respondents had no personal financial stake in the litigation and that all attorney costs were being incurred by Douglas Bruce and the TABOR Committee. Further, Douglas Bruce and the TABOR Committee could not be adjudged "successful plaintiffs" under Amendment 1. Finally, the trial court commented on the impropriety of the contingent fee agreement between the respondents and their attorney.

In its oral findings of fact and conclusions of law, the trial court made the following statements:

> [T]he three plaintiffs at no time incurred any obligation to make payment to Mr. Pratt [their attorney] for attorney's fees or to reimburse him or his actual clients, Mr. Bruce and the Tabor Committee, for any fees and costs that they might incur.
>
> . . . .
>
> The Court notes—and again, it's undisputed that this complaint was filed in this Court on March 2, 1993; that each of the letters which were sent by Mr. Pratt to the nominal plaintiffs in this case is dated March 4, 1993, which advises them of what the fee arrangement is—and that is that it is a contingent fee, and he collects only if he's successful, and that is against the governmental body, that being the City of Wheat Ridge, the defendant; and that they have no obligation for fees whether he's successful or not.

The trial court then determined that a grant of attorney fees under such circum-

stances was contrary to the purpose of Amendment 1, i.e., to encourage citizens to enforce the provisions of Amendment 1. Hence, the trial court concluded that the respondents' attorney was not entitled to any compensation from the court.

The court of appeals reversed the decision of the trial court and held that:

> [W]e do not interpret the provision authorizing awards in favor of "successful plaintiffs" to include a limitation solely to plaintiffs who incurred an obligation to pay or actually paid attorney fees and costs. The plain meaning of this phrase connotes that a plaintiff who prevails is entitled to an award of costs and reasonable attorney fees for litigation undertaken to enforce the amendment's substantive provisions.

Cerveny, 888 P.2d at 341. The court of appeals rejected the trial court's finding that Douglas Bruce was the real party in interest in the underlying litigation and ultimately concluded that "the denial of an award of reasonable attorney fees and costs requested by [the respondents] cannot stand." Id.

## II.

The dispositive issue before us is whether the court of appeals correctly construed the language of Amendment 1. Specifically, we must determine whether the clause "[s]uccessful plaintiffs are allowed costs and reasonable attorney fees" mandates an award of attorney fees to victorious plaintiffs. Hence, we address the interpretation question first.

Amendment 1 was adopted by popular vote on November 3, 1992. When interpreting a constitutional amendment such as Amendment 1, "we should ascertain and give effect to the intent of those who adopted it." Urbish v. Lamm, 761 P.2d 756, 760 (Colo. 1988); see also Bolt v. Arapahoe County Sch. Dist. Six, 898 P.2d 525, 532 (Colo.1995). It is our responsibility to ensure that we effect what the voters "believed the amendment to

---

**4.** Douglas Bruce was the main proponent of Amendment 1. The TABOR Committee vigorously supported the enactment of Amendment 1. "TABOR" is an acronym for the Taxpayer's Bill of Rights, another name for Amendment 1.

**5.** Douglas Bruce and the TABOR Committee were not residents of Wheat Ridge and, therefore, could not have fulfilled the necessary jurisdictional requirements for instituting the action.

mean when they accepted it as their fundamental law." *Urbish,* 761 P.2d at 760. This means that words used in our Constitution must be given their "natural and popular meaning usually understood by the people who adopted them." *Id.* Guided by these principles, we hold that the fee-shifting phrase "[s]uccessful plaintiffs are allowed costs and reasonable attorney fees" is plain and unambiguous. A court is "allowed" to award attorney fees but is not required to do so. Therefore, we reject the court of appeals' conclusion that Amendment 1's fee-shifting language mandates an award whenever a plaintiff prevails under that amendment.

■ Our analysis starts with the "American Rule," long-established in our jurisprudence, which precludes the award of attorney fees to the prevailing litigant, *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1617, 44 L.Ed.2d 141 (1975), "absent a specific contractual, statutory, or procedural rule providing otherwise," *Buder v. Sartore,* 774 P.2d 1383, 1390 (Colo. 1989). Hence, we should not construe a fee-shifting provision as mandatory unless the directive is specific and clear on that score. That is not the case here. The word "allow" is not a specific directive compelling an award of fees.

Dictionary definitions of the common usage of "allow," as relevant in the Amendment 1 context, are synonymous with the word "permit." *See, e.g.,* Webster's Third New International Dictionary 58 (3d ed.1986); Random House Webster's College Dictionary 38 (1992). Notably, Webster's Third New International Dictionary includes a definition of "allow" as "to give or recognize as a right" which squares with the respondents' proposed interpretation. Webster's Third New International Dictionary. However, that definition is provided under the heading "obsolete." *Id.* According to Webster's explanatory notes, an "obsolete" definition signifies that "no evidence of standard use since 1755 has been found or is likely to be found." *Id.* at 16a (Explanatory Notes). Therefore, the respondents' interpretation of the relevant

Amendment 1 language harkens to an outdated usage and cannot be adopted by this court if we remain true to our responsibility to give words used in our constitution their "natural and popular meaning usually understood by the people who adopted them." *Urbish,* 761 P.2d at 760. The voters cannot have intended that Amendment 1 would be given the obscure, archaic interpretation propounded by the respondents.

Amendment 1 does not employ the same language which is found in our mandatory fee-shifting statutes. *See, e.g.,* § 38-12-103(3)(a), 16A C.R.S. (1982) ("The willful retention of a security deposit in violation of this section *shall* render a landlord liable for treble the amount of that portion of the security deposit wrongfully withheld from the tenant, together with reasonable attorneys' fees and court costs") (emphasis supplied); § 8-4-114, 3B C.R.S. (1986) ("Whenever it is necessary for an employee to commence a civil action for the recovery or collection of wages and penalties due ... the judgment in such action *shall* include a reasonable attorney fee in favor of the winning party") (emphasis supplied).

When the word "allow" is used in fee-shifting statutes, it is combined with either "shall" or "may." *Compare* § 10-3-1005, 4A C.R.S. (1994) ("the court may allow to the plaintiff a reasonable attorney fee" in an action against an unauthorized foreign or alien insurer); § 24-34-505.6(6)(b), 10A C.R.S. (1995 Supp.) ("The court, in its discretion, may allow a prevailing party reasonable attorney fees and costs" for a civil action relating to discriminatory housing practice or breach) *with* § 12-13-106, 5A C.R.S. (1991) ("The court shall, as part of the costs, allow reasonable attorney fees for each claimant who is a party to the action [under the Life Care Institutions statute]."); section 38-27-103, 16A C.R.S. (1982) ("the court shall allow a reasonable attorney's fee for the collection and enforcement of [a hospital] lien"). These verb combinations suggest that "allow," standing alone, has not been understood as mandating the award of attorney fees.[6]

---

6. Although not dispositive, we note that the attorney fees contracts signed by the respondents and

their attorney states that the attorney fees "of successful plaintiffs *may* be ordered paid by the

The language at issue here merely states that "[s]uccessful plaintiffs are allowed costs and reasonable attorneys fees." The key words are "are allowed." As applied, Amendment 1 means that courts "are allowed" to award attorney fees to successful plaintiffs.

■ Finally, there is nothing in the underlying purpose of Amendment 1 that compels us to accept the respondents' arguments. Amendment 1 circumscribes the revenue, spending, and debt powers of state and local governments. It creates a series of procedural requirements and nothing more; it does not create any fundamental rights. *Bickel v. City of Boulder,* 885 P.2d 215 (Colo. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1112, 130 L.Ed.2d 1076 (1995). Further, the official history of the amendment lends no support to the respondents' arguments. We note that the attorney fees provision of Amendment 1 was not mentioned in the amendment's title, ballot title and submission clause, or summary. Nor was it discussed in the Legislative Council's analysis of Amendment 1 in the 1992 ballot issues. *See* Legislative Council of the State of Colorado General Assembly, Research Pub. No. 369, *An Analysis of 1992 Ballot Proposals* 6–8 (1992).

A holding that a victorious Amendment 1 litigant must recover attorney fees is antithetical to Amendment 1's overarching goal of limiting government spending. *Cf. Bolt v. Arapahoe County Sch. Dist. Six,* 898 P.2d 525, 532 (Colo.1995) ("a construction which harmonizes different constitutional provisions is favored over one that creates conflict between the provisions"). Mandatory awards of attorney fees necessarily increase government spending. Therefore, short of a clear directive that attorney fees *shall* be awarded to a successful plaintiff, we cannot conclude that the voters intended to impose such costs on themselves.

Thus, we hold that Amendment 1 does not create a mandatory fee-shifting device when a plaintiff taxpayer litigant is successful under Amendment 1. Rather, the determination if a plaintiff should be allowed to recover attorney fees is discretionary with the trial

defendant." (Emphasis added). The entire

court and the proper standard on review is abuse of discretion.

## III.

Next we will address the standards to be applied by the trial court in deciding whether to award attorney fees. After discussing the applicable general principles, we will consider the three specific contentions raised by Wheat Ridge regarding the court of appeals' attorney fees analysis.

## A.

■ In assessing whether to award attorney fees, the trial court must consider a number of factors and reach its conclusion based on the totality of the circumstances. Most importantly, the trial court must evaluate the significance of the litigation, and its outcome, in furthering the goals of Amendment 1. This evaluation must include the nature of the claims raised and the significance of the issues on which the plaintiff prevailed in comparison to the litigation as a whole. Among others, it is also appropriate for the trial court to consider the factors it would weigh in adjudging what "reasonable" attorney fees would be if fees were awarded. We have set forth these factors in *Mau v. E.P.H. Corp.,* 638 P.2d 777, 779 (Colo.1981), as follows:

> "(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
>
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
>
> (3) The fee customarily charged in the locality for similar legal services.
>
> (4) The amount involved and the results obtained.
>
> (5) The time limitations imposed by the client or by the circumstances.
>
> (6) The nature and length of the professional relationship with the client.

paragraph is quoted *infra* text at p. 1117.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent."

*Id.* (quoting Colorado Code of Professional Responsibility, Co.C.P.R. DR 2–106(B)). Other factors may be appropriate to consider in a particular case.

▪ In the case now before us, the respondents asserted two claims. The first was the substantive claim attacking Wheat Ridge's special election. The respondents prevailed on that issue in the trial court and Wheat Ridge did not appeal. Thus, we express no opinion on the merits of the trial court's ruling because it is not before us. We note, however, that two parallel cases were appealed to the court of appeals and we have granted certiorari to review one of the cases.[7] The resolution of that case may be relevant to the trial court's evaluation of the significance of this litigation.

▪ The respondents' second claim was that the trial court was required to award attorney fees to a prevailing plaintiff in an Amendment 1 case. Although we are remanding the case for the trial court to reconsider its discretionary decision to deny attorney fees, the respondents have not prevailed on that issue. In a case like this, where the Amendment 1 plaintiff has had only partial success, the court must exclude the time and effort expended on losing issues if it chooses to award attorney fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (holding in the civil rights context that if claims are separate and distinct and the plaintiff prevails on one claim but not the other, the court should treat the two claims as two separate lawsuits for purposes of awarding attorney fees, *i.e.,* award fees only for work performed in relation to the successful claim).

We now address the remaining three issues raised by Wheat Ridge.

**B.**

Wheat Ridge contends that the court of appeals improperly rejected the trial court's findings of fact and thus, failed to accord the trial court due deference. In particular, Wheat Ridge asserts that the court of appeals rejected the trial court's finding that Douglas Bruce was the real party in interest in the underlying litigation.

▪ We agree that the trial court's conclusion—that the respondents were nominal plaintiffs and the real parties in interest were Douglas Bruce and the TABOR Committee—constitutes a factual determination. However, the ultimate conclusion that the trial court drew from that fact—that the respondents therefore were not successful plaintiffs for purposes of attorney fees—constitutes a legal conclusion. *See Coski v. City and County of Denver*, 795 P.2d 1364, 1367 (Colo.App.1990) ("An appellate court may, however, draw its own conclusions from facts found by the lower court tribunal."). Although the court of appeals may have erred in expressing its result as a rejection of the trial court's underlying fact findings, the court of appeals appropriately reviewed the legal conclusion drawn by the trial court, in part, from that finding. Further, we agree with the court of appeals that the respondents are not disqualified from eligibility for attorney fees because others were found to be the real parties in interest.

**C.**

Wheat Ridge next contends that the court of appeals accorded the respondents a windfall gain by awarding them attorney fees when they have incurred no fees and costs.

---

7. *See Zaner v. City of Brighton,* 899 P.2d 263 (Colo.App.1994); *Stecher v. City of Northglenn,* No. 93CA817 (Colo.App. Dec. 1, 1994) (not selected for official publication). In *Zaner,* the court of appeals held that special elections were permissible under Amendment 1. *Zaner* is pending on certiorari before this court. *Zaner v. City of Brighton,* No. 95SC123 (Colo. June 30, 1995).

In *Stecher,* the court of appeals affirmed the trial court's dismissal for mootness because "[a] declaratory judgment as to the validity of Northglenn's special election under TABOR's election provisions would have no practical legal effect because the measure was not enacted." *Stecher,* No. 93CA817, slip op. at 3.

The contingent fee agreement between each of the respondents and their attorney provided as follows:

> I am representing you for the purpose of bringing a test case, and an enforcement action under the new amendment to the Colorado Constitution, the Taxpayer's Bill of Rights. I have agreed to undertake the case on a contingent fee basis. Under the Constitutional provision, the attorney's fees and costs of successful plaintiffs may be ordered paid by the defendant, the City of Wheat Ridge here. If the court awards attorneys fees, I [attorney] will receive payment of those fees from the City of Wheat Ridge. If the court denies attorneys fees to [the respondents], I will treat the case as pro bono, which means that I have handled the case for free. In either event ... [the respondents] will not be responsible for paying me any attorney's fees.

▇ The court of appeals correctly determined that "a party need not be obligated to pay attorney fees to be entitled to such an award authorized by a statute." *Cerveny*, 888 P.2d at 341. *See* 1 Robert L. Rossi, *Attorneys' Fees* § 7:14 at 387 (2d ed.1995) ("awarding fees even where the legal services are provided at no cost promotes the policies that generally underlie fee statutes: encouragement of private enforcement of the law and the deterrence of improper conduct" and "[c]ourts have also reached the same result where a party incurs no legal expense because its fees are paid by another") (footnotes and cases cited therein omitted).

[13] The court's task in assessing reasonable attorney fees under the circumstances of the case is not linked to the nature of compensation negotiated between the party and his or her attorney. In *Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989), the Supreme Court considered whether, on a motion for attorney fees in a civil rights case brought under 42 U.S.C. § 1988 (1988 & Supp. V 1994), an attorney was limited to compensation as set forth pursuant to a contingent fee agreement. The Supreme Court held that the attorney fees award was not so circumscribed and rejected the argument that the attorney would receive a windfall recovery. In doing so, the Supreme Court noted that properly calculated attorney fees are reasonable under the circumstances of the case. The Supreme Court explained, however, that the nature of the agreed-upon compensation was a factor that could be considered in determining what constitutes reasonable attorney fees. *See also In re Marriage of Swink*, 807 P.2d 1245, 1248 (Colo.App.1991) (holding that under the Uniform Dissolution of Marriage Act, the trial court was allowed to "enter an order requiring a party to pay a reasonable sum for legal services rendered to the other party by a pro bono attorney in dissolution of marriage proceedings").

▇ Nevertheless, in our view, the quantum of financial risk (as well as any other risks) undertaken by the respondents can and should be considered by the trial court in assessing whether or not to grant attorney fees. Furthermore, if on remand the trial court determines that attorney fees are warranted, it can consider the nature of the compensation arrangement between the respondents and their attorney in determining what a reasonable award would be under the circumstances of the case.

Here, the trial court denied attorney fees based predominantly on its interpretation that Amendment 1 authorizes attorney fees only to plaintiffs who personally incur an obligation to pay or actually do pay attorney fees and costs. While the trial court did not improperly consider this fact, it is but one consideration among many. Therefore, the trial court abused its discretion in failing to evaluate other factors, including, most importantly, the significance of the action in effectuating the purposes of Amendment 1.

### D.

Last, Wheat Ridge asserts that the court of appeals erred in determining that the trial court could not apply statutory requirements governing contingent fee agreements in the context of an attorney fees application.

The trial court found that the contingent fee agreements between the respondents and their attorney violated the intent and spirit of

C.R.C.P. Chapter 23.3 of the Rules Governing Contingent Fees:

> The Court notes—and again, it's undisputed that this complaint was filed in this Court on March 2, 1993; that each of the [contingent fee agreement] letters which were sent by Mr. Pratt to the nominal plaintiffs in this case is dated March 4, 1993, which advises them of what the fee arrangement is—and that is that it is a contingent fee, and he collects it only if he's successful, and that is against the governmental body, that being the City of Wheat Ridge, the defendant; and that they have no obligation for fees whether he's successful or not.

> First of all, I don't find that this complies with Chapter 23.3, the intent, spirit or letter of that chapter, that particular rule, as read along with the Code of Professional Conduct. I don't think it complies at all. But I can understand why it was done this way because there was no obligation on the part of the plaintiffs, so therefore I guess there was a feeling that there was no necessity to explain to them what their alternative arrangements could be.

> Also, the evidence discloses that some of the fees and costs have, in fact, been paid by either Mr. Bruce or the Tabor Committee or both, those being reimbursed to Mr. Pratt.

> Given this set of facts, I think it's incumbent on the Court, first, to make an analysis of the language of the Amendment before reaching the determination of whether or not the fees requested are reasonable and necessary.

The court of appeals held that only the parties to the attorney-client contract have standing to challenge its validity. Here, it found that the challenge was initiated improperly by Wheat Ridge, a third party.

[15] Generally, the parties to an attorney-client contract are free to litigate the terms of their agreement as with any other contract. The court's power, absent a challenge by one of the contracting parties, lies dormant. *In re Marriage of Nichols,* 38 Colo.App. 82, 84, 553 P.2d 77, 79 (1976); *see also Hayden v. Bowen,* 404 F.2d 682, 686 (5th Cir.1968) (holding in the context of a fee award that "[t]he contractual arrangements between employees and their counsel are their concern and the employer has no standing to seek the disruption of those arrangements") (footnote omitted). In the present case, the respondents did not challenge the arrangement with their attorney.

Wheat Ridge maintains that the court of appeals overlooked a body of law which provides an exception to the general rule announced in *Nichols.* Specifically, when the agreement is a contingent arrangement, additional court scrutiny is warranted. In support, Wheat Ridge cites two cases in which the court invoked its general supervisory powers over attorneys as officers of the court in order to review their contingent arrangements, *Bryant v. Hand,* 158 Colo. 56, 60, 404 P.2d 521, 523 (1965) and *Anderson v. Kenelly,* 37 Colo.App. 217, 218, 547 P.2d 260, 261 (1975).

In *Bryant,* an action brought by an attorney against his client to enforce the terms of a contingent fee agreement, we held that courts can exercise general supervisory powers over attorneys as officers of the court. In addition, courts could "determine from all the facts and circumstances the amount of time spent, the novelty of the questions of law, and the risks of non-return to the client and to the attorney in the situation" what a reasonable fee would be under a quantum meruit analysis. *Bryant,* 158 Colo. at 60, 404 P.2d at 523. However, we also noted that courts should not attempt to rewrite contingent fee contracts. *Id.* Subsequently, in *Anderson,* an action brought by a client against her attorney, the Colorado Court of Appeals, following our lead, held that a court should scrutinize a contingent fee agreement in order to determine its reasonableness. *Anderson,* 37 Colo.App. at 218, 547 P.2d at 261.

*Bryant* and *Anderson* are inapposite here insofar as each of these cases was brought by one of the parties to the contingent fee contract. The resolution of the issue presently before us turns on whether a court may scrutinize contingent fee agreements in the context of an application for the discretionary award of attorney fees. As noted above, the

trial court is not constrained or bound by the terms of the contingent fee agreement in determining what constitutes a reasonable award.

■ However, the contingent nature of the agreement *can* be considered by the trial court in evaluating whether or not to grant attorney fees. The attorney fees provision of Amendment 1 apparently was intended to enable citizens of ordinary means to enforce Amendment 1. To the extent that the named plaintiff bears no risk and the benefit of such an award will accrue to others, the appropriateness of awarding attorney fees is diminished. Further, in the event the court decides to grant attorney fees, it can consider the deficiencies of the agreement in determining the amount of the award. Therefore, while Wheat Ridge has no standing to challenge the arrangement on the respondents' behalf, it has standing to raise perceived improprieties with the contingent fee agreement for the purpose of disputing an award of attorney fees. A finding of deviation from rule requirements and/or professional standards on the part of the attorney, who stands to reap the benefits of an award, reflects adversely on the quality of the representation. In addition, an attorney who deviates from rule requirements and/or professional standards may not merit an award regardless of a successful outcome.

### IV.

For the foregoing reasons, we reverse the judgment of the court of appeals. We remand the case to that court to be returned to the trial court to apply the standards set forth in this opinion and to determine whether attorney fees are warranted in this case.

ERICKSON, J., specially concurs.

LOHR, J., dissents; and KIRSHBAUM and SCOTT, JJ., join in the dissent.

SCOTT, J., dissents.

Justice ERICKSON specially concurring:

I concur with the majority, but write separately to address the availability of a statutory award of attorney fees where the underlying fee agreement between the attorney and

the taxpayer is violative of the spirit and requirements of the rules governing contingent fees. *See* C.R.C.P. ch. 23.3.

After the complaint in this action was filed, the taxpayer plaintiffs and their attorney, Kevin Pratt, entered into a zero-percent contingent fee arrangement with a specific provision for specially awarded attorney fees. *See* C.R.C.P. ch. 23.3, Rule 7 (Disclosure Statement). The trial court denied the recovery of attorney fees and cost, holding that the taxpayers whom Pratt represented bore no financial risk in this suit and that the fee agreement between Pratt and the taxpayers did not comply with "the intent, spirit or letter" of chapter 23.3. The court noted that plaintiff Carl Cerveny did not recall meeting Pratt until the first deposition was taken, after Pratt had filed the complaint. The court concluded:

> [I]t appears to the Court that there is only really one disputed fact which the Court has to resolve ... and that is that Mr. Pratt was actually hired by Mr. Bruce and/or the Tabor Committee to bring this lawsuit and the companion suit in Northglenn and that in order to provide this Court with jurisdiction, it was necessary to obtain citizens of the City of Wheat Ridge to be named as plaintiffs;

> That the three plaintiffs in this case, Mr. Cerveny, Mr. Langdon, and Mr. Siler, were actually nominal plaintiffs in order to meet the requirement of this Court's jurisdiction[.]

The court then stated:

> The Court notes and, again, it's undisputed that this complaint was filed in this Court on March 2, 1993; that each of the letters which were sent by Mr. Pratt to the nominal plaintiffs in this case is dated March 4, 1993, which advises them of what the fee arrangement is and that is that it is a contingent fee, and he collects only if he's successful, and that is against the governmental body, that being the City of Wheat Ridge, the defendant; and that they have no obligation for fees whether he's successful or not.

> First of all, I don't find that this complies with Chapter 23.3, the intent, spirit or

letter of that chapter, that particular rule, as read along with the Code of Professional Conduct. I don't think it complies at all. But I can understand why it was done this way because there was no obligation on the part of the plaintiffs, so therefore I guess there was a feeling that there was no necessity to explain to them what their alternative arrangements could be.

Also, the evidence discloses that some of the fees and costs have, in fact, been paid by either Mr. Bruce or the Tabor Committee or both, those being reimbursement to Mr. Pratt.

. . . .

The intent of the Amendment, I think, should be clear to it [sic] all of us. And that is that it was to encourage a citizen or group of citizens to bring an action to enforce the Tabor Amendment, or Amendment No. 1, in those instances where they felt that it was being violated by a governmental unit.

And in order to lessen the financial risk to those citizens, the Amendment provides that if they are successful, that the governmental unit will reimburse them for their reasonable attorneys' fees and costs.

In my view, this court should not encourage champerty or maintenance, or award statutory attorney fees to an attorney who has violated the ethical rules governing the collection of fees. *See* 1 Robert L. Rossi, *Attorney's Fees* § 3:41 at 211 (2d ed.1995) (stating that authorities differ as to whether an attorney can recover for services rendered under a contingent fee contract which is "champertous, violative of statute or rule").

I agree with the trial court's denial of attorney fees in this case.

Justice LOHR dissenting:

The majority interprets a clause within article X, section 20(1), of the Colorado Constitution to mean that plaintiffs who prevail in individual or class action enforcement suits with respect to the provisions of that section are not mandatorily entitled to reasonable attorney fees. Maj. op. at 1115. Instead, the majority concludes that the award of such fees to successful plaintiffs is discretionary with the trial court. *Id.* The majority therefore reverses the judgment of the Colorado Court of Appeals, which arrived at a contrary conclusion. *See Cerveny v. City of Wheat Ridge,* 888 P.2d 339, 341 (Colo.App. 1994). I agree with the court of appeals' construction of the clause. I therefore respectfully dissent and would affirm the judgment of the court of appeals.

## I.

Section 20(1) of article X of the Colorado Constitution is part of what is commonly referred to as Amendment 1. Amendment 1 contains numerous provisions governing and limiting governmental revenue, spending, and debt. To assist in promoting compliance with those provisions, Amendment 1 provides that "[i]ndividual or class action enforcement suits may be filed and shall have the highest civil priority of resolution." Colo. Const. art. X, § 20(1). Immediately following that provision is the sentence that we must construe to resolve this case: "Successful plaintiffs are allowed costs and reasonable attorney fees, but a district [1] is not unless a suit against it be ruled frivolous." The court of appeals held that "[t]he plain meaning of this phrase connotes that a plaintiff who prevails is entitled to an award of costs and reasonable attorney fees for litigation undertaken to enforce the amendment's substantive provisions." *Cerveny,* 888 P.2d at 341. I agree. To me, that meaning appears plain and obvious, and a discussion of principles of construction is unnecessary to arrive at that conclusion. The majority, however, construes that phrase differently, so I will extend this dissenting opinion by an analysis of the meaning of the relevant language.

## II.

The operative words in the sentence to be construed are "are allowed." The meaning of the two words in this combination must be ascertained by first determining the custom-

---

**1.** "District" is a term defined in Amendment 1 to include the state or any local government, with certain exceptions. Colo. Const. art. X, § 20(2)(b),(d). The definition is not relevant to the issue before us.

ary meaning of the word "allow" or "allowed" in the context of provisions for attorney fees and then to consider the effect of preceding that term with the word "are."

In the attorney fees context, "allow" is typically used as a synonym for "award." Colorado law contains numerous examples of statutory provisions in the attorney fees context that employ the word "allow" as a synonym for the word "award." *E.g.*, § 10–3–1005, 4A C.R.S. (1994) ("the court may allow to the plaintiff a reasonable attorney fee"); § 12–13–106(5), 5A C.R.S. (1991) ("[t]he court shall, as part of the costs, allow reasonable attorney fees"); § 24–34–505.6(6)(b), 10A C.R.S. (1995 Supp.) ("The court, in its discretion, may allow the prevailing party reasonable attorney fees and costs."); § 38–27–103, 16A C.R.S. (1982) ("the court shall allow a reasonable attorney's fee"); § 38–38–201(1)(a), 16A C.R.S. (1995 Supp.) ("[a]ttorney fees allowed to the foreclosing creditor shall not exceed ten percent of the amount of principal, interest, and late charges"); *see also* § 37–92–503(1)(b), 15 C.R.S. (1990) ("if the court upholds the order of the state engineer, the person against whom such order was issued shall pay the costs of the proceeding, including the allowance of a reasonable attorney fees").

Other jurisdictions also utilize the word "allow" as a synonym for the word "award" in the context of attorney fees provisions. Attorney fees statutes from other states typically use "allow" and "award" synonymously. *See, e.g.*, Alaska Stat. § 09.60.015(a) (1994) ("[T]he plaintiff shall be allowed a reasonable amount to be fixed by the court as attorney fees .... However, attorney fees may not be allowed to the plaintiff if the court finds ...."); Haw.Rev.Stat. § 431:8–209 (1993) ("the court may allow to the plaintiff reasonable attorney's fees"); Idaho Code § 12–120(1) (Supp.1995) ("[T]here shall be taxed and allowed to the prevailing party, as part of the costs of the action, a reasonable amount to be fixed by the court as attorney fees. For the plaintiff to be awarded attorney fees, for the prosecution of the action, written demand for the payment of such claim must have been made ... provided, that no attorney fees shall be allowed to the plaintiff if the court finds ...."); Kan. Stat. Ann. § 50–801(c) (1994) ("the plaintiff may be allowed reasonable attorney fees and costs"); Minn.Stat. § 48.185(7) (Supp.1995) ("Costs and attorneys' fees may be allowed to the plaintiff, unless the court directs otherwise."); N.C. Gen.Stat. § 105–380(c) (1995) ("[t]he costs of bringing the action, including reasonable attorneys' fees, shall be allowed the plaintiff"); Or.Rev.Stat. § 30.075(2) (1993) ("[T]here shall be taxed and allowed to the plaintiff, at trial and on appeal, a reasonable amount to be fixed by the court as attorney fees .... provided, no attorney fees shall be allowed to the plaintiff if the court finds ....") (repealed and replaced by Or. Rev.Stat. § 30.075(2) (1995) ("In any such action the court may award to the prevailing party, at trial and on appeal, a reasonable amount to be fixed by the court as attorney fees.")); Or.Rev.Stat. § 746.350 "Attorney fee allowable to prevailing party" (1995) ("the court may award reasonable attorney fees to the prevailing party"); Pa. Stat. Ann. tit. 43, § 260.9a(f) (1992) (the court shall "allow costs for reasonable attorneys' fees"); S.D. Codified Laws Ann. § 60–11–24 "Costs and attorney fees allowed plaintiff in action removed by defendant" (1993) ("the court may, in addition to awarding judgment to the plaintiff, allow costs of the action including reasonable attorney fees"); Vt. Stat. Ann. tit. 8, § 3390 (1984) ("the court may allow to the plaintiff a reasonable attorney fees"); Wash. Rev.Code § 8.25.075(3) (1995) (the court "shall award or allow to such plaintiff costs including reasonable attorney fees"). Similarly, the United States Code uses "allow" as a synonym for "award" in the attorney fees context. *See, e.g.*, 28 U.S.C.A. Form 17(10)(4) (West 1992) ("That defendant pay to plaintiff the costs of this action and reasonable attorney's fees to be allowed to the plaintiff by the court.").

Because "allow" and "award" are used synonymously in the context of attorney fees provisions, courts interpreting such provisions have used the two words interchangeably. Courts often indicate that they will "allow" attorney fees even where the underlying attorney fees award provisions reference only an "award" of attorneys fees or where the court simply means that they will

"award" such fees. *See, e.g., Emmanuel v. Omaha Carpenters Dist. Council,* 560 F.2d 382, 385–86 (8th Cir.1977) ("The District Court did not err in allowing attorney's fees .... In our view, the fee allowed was very generous."); *Yablonski v. United Mine Workers of America,* 466 F.2d 424, 431 (D.C.Cir.1972) ("the litigating stage attained is relevant only to the amount of the fees to be allowed, and not to the issue of whether they should be awarded at all"), *cert. denied,* 412 U.S. 918, 93 S.Ct. 2729, 37 L.Ed.2d 144 (1973); *Dixie Cup Co. v. Paper Container Mfg. Co.,* 169 F.2d 645, 651 (7th Cir.1948) ("Whether either party is entitled to an award of attorney fees under the circumstances of the case, we express no opinion. If the court, however, sees fit to make such allowance, we think the proper exercise of its discretion requires that the amount allowed bear some reasonable relation ...."); *Pollock & Riley, Inc. v. Pearl Brewing Co.,* 362 F.Supp. 335, 336 (W.D.Tex.1973) ("The question of the amount of attorney's fees to be allowed the successful plaintiff in an antitrust action is one left solely to the reasonably exercised discretion of the Trial Judge .... Thus, the allowance of attorney's fees is mandatory and the only function of the Court is to determine the amount thereof.") (citations omitted), *aff'd,* 498 F.2d 1240, 1246 (5th Cir. 1974), *cert. denied sub nom. Gulf Oil Corp. v. Wood,* 420 U.S. 992, 95 S.Ct. 1427, 43 L.Ed.2d 673 (1975); *United States v. Kelly,* 192 F.Supp. 274, 279 (D.Alaska 1961) ("[C]osts are allowed as of course to the prevailing party unless the Court otherwise directs .... Such fees if allowed to plaintiff ... would amount to $615 ....") (internal punctuation omitted). Judicial reliance on "allow" as a synonym for "award" in the attorney fees context provides additional support for an interpretation of Amendment 1 that treats the two words synonymously, emphasizing that this court should focus instead on the modifying phrases used in conjunction with the "allow" language.

Because "allow" and "award" are used synonymously in the attorney fees context in both statutory provisions and judicial opinions, the critical inquiry in determining the meaning of a phrase containing some form of the verb "allow" must be the effect of the qualifying words that are coupled with it. Therefore, I agree with the majority that the critical language in attorney fees provisions lies not in the use of the word "allow," but in the combination of "allow" with (1) modifiers that require mandatory action, *e.g.,* "shall allow" or "must allow," or (2) qualifiers that authorize discretionary action, *e.g.,* "may allow" or "can allow." *See* maj. op. at 1114. As the majority notes, it is "[t]hese verb combinations," and not "'allow,' standing alone," that inform our interpretations of attorney fees provisions that contain the word "allow." *See id.*

When the word "allowed" in Amendment 1 is considered together with the word "are" with which it is paired, it becomes apparent that Amendment 1 requires an award of attorney fees to prevailing plaintiffs. Surely, this court would require attorney fee awards if the relevant language of Amendment 1 read that "successful plaintiffs are awarded reasonable attorney fees." Instead, Amendment 1 provides that "[s]uccessful plaintiffs are allowed ... reasonable attorney fees." Colo. Const. art. X, § 20(1). The majority reasons that the requirement in Amendment 1 that "'[s]uccessful plaintiffs are allowed costs and reasonable attorney fees'" actually "means that *courts* 'are allowed' to award attorney fees to successful plaintiffs." Maj. op. at 1115 (emphasis added) (quoting Colo. Const. art. X, § 20(1)). I believe that this interpretation abandons the plain meaning of Amendment 1. In view of the frequent and well-recognized synonymous use of "allow" and "award" in the attorney fees context, I would read the directive that "[s]uccessful plaintiffs *are* allowed ... reasonable attorney fees" to require an award of attorney fees to a prevailing party in an Amendment 1 action. Colo. Const. art. X, § 20(1) (emphasis added).

### III.

For the foregoing reasons, I respectfully dissent to the majority opinion and would affirm the judgment of the court of appeals, which reverses the trial court's order denying attorney fees to the successful plaintiffs in this case and remands the case to the trial court with directions to determine a reason-

able amount of attorney fees and award them to the plaintiffs.

KIRSHBAUM and SCOTT, JJ., join in the dissent.

Justice SCOTT dissenting:

The Taxpayer's Bill of Rights (Amendment 1) [1] provides that "[s]uccessful plaintiffs are allowed costs and reasonable attorney fees" in "enforcement suits," whether brought individually or by class action. Colo. Const. art. X, § 20(1). The court of appeals held "the denial of an award of reasonable attorney fees and costs requested by [a successful] plaintiff cannot stand." *Cerveny v. City of Wheat Ridge*, 888 P.2d 339, 341 (Colo.App. 1994). Because I conclude the plain language of Amendment 1 makes such an award mandatory, I would affirm the judgment of the court of appeals. The majority improperly concludes that the people intended to give government the authority to withhold attorney fees that "successful *plaintiffs* are allowed." By its decision today, the majority construes the plain language to *allow government* to limit the enforcement of Amendment 1. From such a result, I respectfully dissent.

## I

On March 2, 1993, the three taxpayer plaintiffs filed a complaint to enforce article X, section 20(3)(a) of the Colorado Constitution. [2] The taxpayer plaintiffs sought declaratory and injunctive relief against Wheat Ridge to prevent a May 4, 1993, special election on a ballot issue. After a two-day trial, the trial court entered judgment in favor of taxpayers and against Wheat Ridge. [3] As successful plaintiffs, taxpayers then sought attorney fees and costs totalling $15,-088.41. The trial court denied the request.

The court of appeals reversed. It held that "[t]he plain meaning of [Amendment 1] connotes that a plaintiff who prevails is entitled to an award of costs and reasonable attorney fees for litigation undertaken to enforce the amendment's substantive provisions" and Amendment 1 does not limit the award of attorney fees "solely to plaintiffs who incurred an obligation to pay or actually paid attorney fees and costs." *Id.* at 341.

## II

Unlike the majority, I would not have our judgment turn on the *omission* of the words "shall" or "may." Our purposes and judicial duty are better served when we focus upon the central intent and purpose the electorate decided to assign Amendment 1. To that end, the plain language *utilized,* and not terms omitted, will assure fidelity to our charge.

## III

Amendment 1 states that "[s]uccessful plaintiffs are *allowed* costs and reasonable attorneys fees ...." Colo. Const. art. X, § 20(1) (emphasis added). The resolution of this case turns upon the intended use of that phrase in the Taxpayer's Bill of Rights.

## A

When interpreting a constitutional amendment, "we should ascertain and give effect to

1. Amendment 1 was adopted by the people in the November 1992 general election as part of their fundamental law. Under its terms, Amendment 1 imposes limitations on the spending and taxing powers of state and local government, requiring voter approval in advance of any new tax or debt increases. *Bickel v. City of Boulder*, 885 P.2d 215, 226 (Colo.1994), *cert. denied*, — U.S. —, 115 S.Ct. 1112, 130 L.Ed.2d 1076 (1995). While the attorney fees provision is, perhaps, more properly referred to as article X, § 20(1), unless otherwise indicated, I will refer to it as "Amendment 1," a common usage.

2. Article X, § 20(3)(a) provides that ballot issues to increase taxes or debt submitted for voter approval "shall be decided in a state general

election, biennial local district election, or on the first Tuesday in November ...."

3. Wheat Ridge did not appeal the trial court's ruling on the substantive issue concerning the timing of the special election on the ballot issue. As a consequence, the trial court's ruling is final and represents the law of this case for purposes relevant here. Hence, unlike the majority, I refuse to engage in the dangerous and imprudent course of speculating as to the merit, value, or propriety of the trial court's ruling. Because the judgment on the merits below is final and not subject to further review, we should discourage attempts to reassess or reevaluate the validity of a final judgment solely for purposes of attorney fees.

the intent of those who adopted it." *Urbish v. Lamm,* 761 P.2d 756, 760 (Colo.1988). Because Amendment 1 "was adopted by popular vote, we must seek to determine what the people believed the amendment to mean when they accepted it as their fundamental law." *Id.* Therefore, "words used in the Constitution are to be given the natural and popular meaning usually understood by the people who adopted them." *Id.* Thus, " 'the will of the electors, when fully and freely expressed, will not be defeated by a strict and technical construction of the law.' " *Bickel,* 885 P.2d at 226 (quoting parenthetically *People ex rel. Johnson v. Earl,* 42 Colo. 238, 252, 94 P. 294, 298–99 (1908)). Finally, "[t]he Colorado Constitution ... must be liberally construed so as not to unduly limit or curtail the initiative rights of the people." *In re Second Initiated Constitutional Amendment Respecting the Rights of the Public to Uninterrupted Serv. by Pub. Employees of 1980,* 200 Colo. 141, 613 P.2d 867, 870 (1980).

To determine intent, we first look to the words used. *See People v. Warner,* 801 P.2d 1187, 1190 (Colo.1990). The words and phrases used must be read in context and accorded their plain and ordinary meaning. *See Bertrand v. Board of County Comm'rs,* 872 P.2d 223, 228 (Colo.1994); *Scoggins v. Unigard Ins. Co.,* 869 P.2d 202, 205 (Colo.

1994). "When the wording of a constitutional provision is not overburdened with confusion or ambiguity, efforts to apply various rules of construction to obtain a different meaning are without justification." *In re Interrogatory of the House of Representatives, Presented by House Joint Resolution No. 1011,* 177 Colo. 215, 217, 493 P.2d 346, 348 (1972); *see also East Lakewood Sanitation Dist. v. District Court,* 842 P.2d 233, 235 (Colo.1992) (When construing language that " 'is clear and unambiguous, there is no need to resort to interpretive rules of statutory construction ....' ") (quoting *Woodsmall v. Regional Transp. Dist.,* 800 P.2d 63, 67 (Colo.1990)); *Husson v. Meeker,* 812 P.2d 731, 732 (Colo. App.1991) ("A statute free from ambiguity leaves no room for interpretation or construction.").

**B**

Amendment 1's purpose is to place in the electorate, not government officials, control over "state and local government finance, spending and taxation." *Bickel,* 885 P.2d at 226. As generally used under our tax laws, "allowed" grants taxpayers a deduction or credit not subject to government discretion. *See* Black's Law Dictionary 70 (5th ed.1979) (defining "allow" as "[t]o grant something as a deduction or an addition ....").[4] As that

---

4. The majority states that "[d]ictionary definitions of the common usage of 'allow,' as relevant in the Amendment 1 context, are synonymous with the word 'permit.' " Maj. op. at 1114. However, I read its source differently. A complete listing of definitions is as follows.

> 1 archaic a: praise b: approve, sanction, accept <truly ye bear witness that ye ~ the deeds of your fathers—Lk 11:48(AV)~ 2a obs: to give or recognize as a right *b(1): to give or assign as a share or suitable amount (as of time or money) to a particular person or for a particular purpose* < ~ an hour for lunch ~ <~ ed each child one dollar a week as spending money ~ *(2): to allot or assign as a deduction or an addition* < ~ a gallon for leakage ~ 3: *to accept as true or as represented: admit, concede,* acknowledge <a people of whom this is true must be ~ ed to be musical—Wyn Griffith ~ <he will not ~ that we have eliminated these evils ~ <played a more important part in his life than his biographer ~ s ~ 4: permit <a pipe to ~ the heated air to escape ~ <occasional gaps ~ passage through the mountains ~ <pulled to the side to ~ us to pass ~; a: to

permit by way of concession <no smoking ~ ed ~ <he ~ s himself many luxuries ~ <children too young to be ~ ed out at night ~ b: to permit by neglecting to restrain or prevent < ~ a garden to become overgrown with weeds ~ <conditions which should never have been ~ ed to develop ~ <she had ~ ed herself to become very fat ~ 5: dial a: to be of the opinion: think, suppose <we ~ ed it was too late to start ~ b: intend, plan—usu. used with an infinitive <I ~ to go fishing tomorrow ~ ~ vi 1: to make a possibility: provide opportunity or basis: admit, permit—used with of <evidence that ~ s of only one conclusion ~ <underbrush too dense to ~ of shooting ~ 2: to give consideration: make allowance—used with for <distance ~ ing for detours, of about 10 miles ~ 3 dial: suppose, consider syn see let

Webster's Third New International Dictionary 58 (3d ed.1986) (emphasis added). Although Webster's editors state definition 1 is "archaic" and 2a is obsolete, definitions 2b and 3, which precede the definition relied upon by the majority, maj. op. at 1114, are clear as to the meaning: "assign a share [of] money ... for a particular

term is used in the Taxpayer's Bill of Rights, Amendment 1 creates a mandatory right to attorney fees for the successful plaintiff. If a taxpayer meets the qualifications for a deduction, then the government lacks the discretion to deny the claim. For example, in *Commissioner v. Lyne*, 90 F.2d 745, 747 (1st Cir.1937), the federal appellate court stated:

> It is argued that the Commissioner has a certain discretion in determining what deductions shall be allowed. But the language of the statute—"the value of the net estate shall be determined ... by deducting from the value of the gross estate ... such amounts ... for claims against the estate ... as are allowed by the laws of the jurisdiction ... under which ... the estate is being administered"—seems too direct and mandatory on this point to permit such discretionary action on his part. Where the statute is plain it is controlling.

(Citation omitted.) Similarly, in an Amendment 1 context, if a plaintiff is "successful," then a court may not deny a claim for attorney fees.

This conclusion follows from a fair reading of the plain language for two reasons. First, "allowed" is a term of art frequently used under our tax laws to establish a claim or entitlement that inures to the benefit of the taxpayer. For example, under the Colorado Income Tax Act of 1987, deductions and credits which reduce a taxpayer's tax liability are "allowed." *See, e.g.,* § 38–22–108, 16B C.R.S. (1994); § 39–22–113, 16B C.R.S. (1994); § 39–22–114, 16B C.R.S. (1994); § 39–22–114.5, 16B C.R.S. (1994). Some provisions under the tax statutes state the deduction or credit "shall be allowed," while others refer to the "credit allowed" or the "exclusion allowed." Nonetheless, the deduction or credit so established creates a nondiscretionary right.

Second, this interpretation is consistent with our earlier constitutional construction of the term "allowed." Article VI, section 2(2) provides that "[a]ppellate review by the supreme court of every final judgment ... shall be allowed ...." In *Bill Dreiling Motor Co. v. Court of Appeals,* 171 Colo. 448, 452, 468 P.2d 37, 39 (1970), we construed the phrase "shall be allowed" as mandating appellate review. There, we held that "[t]he study by this court of ... [a] petition [for certiorari] and of the record on appeal to determine whether to grant or deny the petition constitutes a review. As to petitions for certiorari which are denied, we hold that this review is 'appellate review' as that term is used in the Colorado constitution." *Id.* at 453, 468 P.2d at 40.

## IV

I would construe article X, section 20(1) in reliance upon the plain language as well as the structural scheme and general purposes of Amendment 1. Designed to limit the "spending and taxing powers of state and local governments," *Bickel,* 885 P.2d at 225, Amendment 1 is enforced by private citizens. Consistent with its purpose of limiting government authority to tax and spend, Amendment 1 includes within its constitutional scheme a private enforcement mechanism. The electorate did not intend to give more authority to the government.

Amendment 1 does not empower, but limits, government. A taxpayer litigant who brings a meritorious Amendment 1 claim advances important constitutional principles that benefit citizens not involved in the litigation. However, Amendment 1 does not provide the successful plaintiff taxpayer with any monetary award. Hence, a taxpayer litigant willing to advance meritorious claims must be confident that he or she will be properly compensated for the costs of such an effort.

purpose," "allot or assign as a deduction," and "accept as true." Finally, in the face of our charge here—to " 'give effect to the intent of those who adopted it,' " as to "what the voters 'believed the amendment to mean,' " maj. op. at 1113 (quoting *Urbish,* 761 P.2d at 760), I add the

wisdom of Judge Benjamin N. Cardozo: "The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal." *Wood v. Lucy, Lady Duff-Gordon,* 222 N.Y. 88, 118 N.E. 214, 214 (1917).

At the same time, two safeguards prevent unnecessary Amendment 1 litigation. Attorney fees must be *reasonable* and may only be awarded to *"successful* plaintiffs." These protections encourage taxpayer litigants to evaluate the merits of their claims before filing. Citizens bear the risk of failure in Amendment 1 litigation. Citizens who advance nonmeritorious claims receive nothing, while successful plaintiffs receive only reasonable attorney fees and costs. Also, if a plaintiff brings a frivolous suit, then government may recover attorney fees. Colo. Const. art. X, § 20(1).

Because Amendment 1 depends heavily upon private enforcement, attorney fee awards are an essential remedy if private citizens are to have a meaningful opportunity to vindicate the provision's purposes without encouraging the growth of government. Private citizen enforcement of Amendment 1 can only be encouraged, however, through litigant expectancy of an award of reasonable attorney fees as determined by the trial court. To hold otherwise would frustrate the private attorneys general enforcement mechanism the electorate placed within Amendment 1.

## V

Having concluded that an award of attorney fees to the successful taxpayer plaintiff is mandatory, I also disagree with the majority's calculation of *reasonable* attorney fees, which contemplates a highly subjective reassessment of the value of a final judgment and, as a consequence, potentially ignores the law of the case.

## A

While I agree with the majority that the amount of any fee should be based on reasonableness in attorney fee determinations, I disagree with the majority's holding that *"[m]ost importantly,* the trial court must evaluate the significance of the litigation, and its outcome, in furthering the goals of Amendment 1." Maj. op. at 1115 (emphasis added). I agree that the results achieved by

an attorney should be considered in a fee determination. However, the majority affords the factor too much weight, *i.e.,* "[m]ost importantly," and it engages in too broad of an analysis of "the significance of the issues on which the plaintiff prevailed." *Id.* at 1115.

The consideration of an attorney's success should be limited to the particular case he or she litigated. A trial court should not look behind a judgment or consider other cases. Taken to its logical conclusion, a trial court must examine other cases that run the appellate course before determining the success of the matter before it. Waiting for a jurisprudential "consensus" defeats the goal of compensating live human beings for their efforts and expenses. Instead, under the majority's approach, an attorney fees award becomes a belated judicial blessing of an idea or concept.

Here, the taxpayer plaintiffs accomplished the relief sought, and Wheat Ridge did not appeal. The trial court's judgment in favor of the taxpayer plaintiffs is final and should not be subjected to collateral attack for purposes of an attorney fee calculation. Moreover, the results achieved by other lawyers in other cases should have no effect on the taxpayers' successful claim and are irrelevant in the present attorney fee determination.

## B

Finally, Amendment 1 controls a losing defendant's obligations. A plaintiff's fee obligation is not always calculated by the reasonableness standard that a defendant must pay pursuant to a court order. *See Venegas v. Mitchell,* 495 U.S. 82, 90, 110 S.Ct. 1679, 1684, 109 L.Ed.2d 74 (1990). The attorney-client agreement should not control a trial court's determination of what constitutes a reasonable fee award. *See Blanchard,* 489 U.S. at 93, 109 S.Ct. at 944. Because "windfall" considerations are inherently linked to the private contractual agreement between attorney and client, they should not control a trial court's reasonableness evaluations. *See id.* at 96, 109 S.Ct. at 946 (explaining that the

reasonableness requirement prevents a "windfall" to a plaintiff).

Therefore, I would conclude that the trial court erred in its interpretation of Amendment 1 as a matter of law. The trial court also erred by basing its denial of attorney fees on plaintiffs' obligation to Mr. Pratt. I would affirm the court of appeals and return the case to that court for remand to the trial court. On remand, I would instruct the trial court to use reasonableness as the benchmark for an award of attorney fees,[5] disregarding the taxpayers' obligation to their attorney.

## VI

The people, when adopting Amendment 1 as part of their constitution, believed and intended that successful citizen plaintiffs should be awarded reasonable attorney fees. Therefore, an award of reasonable attorney fees, as determined by the trial court, should be mandatory under Amendment 1. Moreover, such award of attorney fees should be made regardless of the taxpayers' fee obligations, whether under a contingency fee agreement or not.

Accordingly, because I would affirm the judgment of the court of appeals, I respectfully dissent from the opinion and judgment of the majority.

---

**5.** At the attorney fees hearing, the trial court correctly heard expert testimony regarding the "lodestar" amount. The lodestar amount represents "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1935, 76 L.Ed.2d 40 (1983). However, the trial court erred by disregarding this testimony. On remand, the trial court should use the lodestar amount as a starting point in determining reasonable attorney fees.