In re the MARRIAGE OF Sarah
K. REDMOND, Appellee,

and

Jesse L. BEZDEK, Appellee,

and Concerning Virginia L. Card Smith, former special advocate, Attorney–Appellant.

No. 03CA1970.

Colorado Court of Appeals,
Div. III.

Oct. 6, 2005.

Certiorari Denied April 3, 2006.*

* Justice COATS would grant as to the following issues:

Whether the court erred in remanding the case to the district court after the supreme court, via the Office of Attorney Regulation Counsel has investigated the allegations involving the former special advocate and resolved the matter under Colorado Rules of Professional Conduct and the attorney agreed to diversion on October 24, under Colo. RPC 5.3(b), failure to properly supervise a non-lawyer, and Colo.RPC 8.4(h), conduct that adversely reflects on fitness to practice law, and the appellant had fulfilled the diversion requirements pursuant to C.R.C.P. 251.13 ending on November 24, 2004.

Whether the court erred in the remand of the case to the trial court for an evidentiary hearing and to have discretion for attorney to return any or all of her fees if it finds that she violated Colo. RPC 8.4(c), which involved a lawyer engaging in conduct involving dishonesty, fraud, deceit or misrepresentation.

Whether the appellate court erred in remanding the case in view of that special advocate (family court investigators) have been legislatively declared to have quasi judicial immunity, if the stated reason is to mete out punishment in the form of reclaiming previously earned and paid fees.

David R. Gloss, Denver, Colorado, for Appellee Sarah K. Redmond.

No Appearance for Appellee Jesse L. Bezdek.

Virginia L. Card Smith, Denver, Colorado, for Attorney–Appellant.

TAUBMAN, J.

In this dissolution of marriage proceeding between Sarah K. Redmond and Jesse L. Bezdek, Virginia L. Card Smith, the former special advocate, appeals the trial court's order requiring her to return the fees paid to her by the parties. We vacate the court's order and remand with directions.

During the dissolution proceeding, Redmond and Bezdek stipulated to the appointment of Smith for recommendations regarding the best interests of their minor child, who was born with life-threatening heart conditions. Smith spent fifty-one hours working on the case, which included five home visits and six hours preparing her special advocate report. Smith is an attorney and a former nurse.

In December 2002, Redmond filed a motion to remove Smith and appoint a new special advocate on the ground that Smith had altered the dates on several authorizations to release medical information without Redmond's knowledge or consent. According to Smith, the alterations were made while she was on medical leave for heart surgery.

Bezdek objected to Smith's removal, contending that the issue raised by Redmond was a "red herring" in an attempt to sabotage Smith.

After Redmond filed her motion to remove, Smith filed a motion to withdraw from the case, citing the best interests of the child.

The trial court held a hearing to determine whether Smith would be required to refund her fees to the parties if she were permitted to withdraw from the case. At the hearing, Redmond's counsel explained the allegations of improper conduct against Smith for having altered the dates on the medical releases. Smith admitted that she did not obtain permission to change the dates, but she was not allowed to explain further the circumstances behind the changes.

The court concluded that it had lost confidence in Smith because of the alteration of the dates. It entered an order allowing Smith to withdraw and asked the parties to submit briefs on the issue of whether Smith should be required to refund her fees. In the briefs, Redmond asked that the court order Smith to refund her fees, and Bezdek and Smith argued against a refund. The court ordered Smith to refund her fees to the

parties because of the altered dates on the medical releases. The court ruled that because it believed Smith's conduct was unethical, her work was of no value, and it declined to read her report. It also stated:

> None of the briefs filed reflect any Colorado cases on this exact point. However, there is case law which clearly establishes that courts have general supervisory powers over attorneys and their fees. *People v. Nutt*, 696 P.2d 242 (Colo.1984); *Anderson v. Kenelly*, 37 Colo.App. 217, 547 P.2d 260 (1975). The special advocate in this case is an attorney. Further, "an attorney who deviates from rule requirements and/or professional standards may not merit an award [of attorney fees] regardless of a successful outcome." *City of Wheat Ridge v. Cerveny*, 913 P.2d 1110, 1119 (Colo.1996).

Smith filed a timely motion to reconsider, which the court denied.

### I. Refund of Fees

Smith first contends that the trial court erred in ordering her to refund her fees to Bezdek and Redmond. We agree.

Under the current statute enacted in 2005, § 14–10–116.5(1), C.R.S.2005, the trial court may appoint the equivalent of a special advocate as a child and family investigator to assist the court in a domestic relations proceeding that involves allocation of parental responsibilities. The former statute, applicable in this case, provided: "The special advocate may be, but need not be, an attorney." Colo. Sess. Laws 1997, ch. 14, § 14–10–116(2)(b) at 32; *cf.* § 14–10–116.5(2), C.R.S. 2005 ("A child and family investigator appointed by the court may be an attorney, a mental health professional, or any other individual with appropriate training, qualifications, and an independent perspective acceptable to the court."). The former § 14–10–116(2)(b) stated: "The special advocate shall investigate, report, and make recommendations on any issues that affect or may affect the best interests of the [child]." *Cf.* § 14–10–116.5(2) ("The child and family investigator for the court shall investigate, report, and make recommendations as specifically direct-ed by the court in the appointment order ....").

The former § 14–10–116(3), comparable to the current § 14–10–116.5(3), C.R.S.2005, required the court to enter an order for costs, fees, and disbursements in favor of the special advocate "against any or all of the parties; except that, if the responsible party is indigent, the costs, fees, and disbursements shall be borne by the state." This section was mandatory. *In re Marriage of Eggert*, 53 P.3d 794 (Colo.App.2002).

The guidelines for the payment of fees to special advocates are contained in Chief Justice Directives (CJDs), which are policy statements promulgated pursuant to the Colorado Supreme Court's general power over the administration of the Colorado judicial system. *See Pachota v. Dist. Court*, 807 P.2d 544 (Colo.1991).

CJD 97–02, applicable here but now repealed and replaced by CJD 04–05 and 04–06, addressed the appointment, payment, training, and duties of court-appointed attorney special advocates, as well as the duties of judges and magistrates relative to them. With respect to payment, CJD 97–02 stated, "The court shall enter an order for costs, fees, and disbursements against any or all of the parties."

Regarding an alleged violation of the Colorado Rules of Professional Conduct, CJD 97–02(XIII)(A) directed the parties to file a complaint concerning an attorney special advocate with the Colorado Supreme Court Office of Attorney Regulation Counsel. CJD 97–02(XIV)(A) provided that failure to comply with the directive "may result in termination of the contract and/or removal from the appointment list."

Nothing in the former § 14–10–116, the current § 14–10–116.5, or CJD 97–02 expressly mentions a court's power to deny a special advocate his or her fees if the court determines that it has lost confidence in the special advocate or that the special advocate's report is of no value.

■ However, it is well established that courts have inherent supervisory powers over attorneys as officers of the court. *City of Wheat Ridge v. Cerveny, supra; People v.*

*Nutt, supra; Anderson v. Kenelly, supra; Bryant v. Hand,* 158 Colo. 56, 404 P.2d 521 (1965).

When reviewing contingency fee agreements for reasonableness under their inherent powers, Colorado courts have tested the contracts against the quantum meruit standard. *People v. Nutt, supra.* Under this standard, courts have reduced the fees payable to attorneys when they have determined that the contracts were unreasonable. *Anderson v. Kenelly, supra; Bryant v. Hand supra.*

The supreme court has also held that an attorney who deviates from rule requirements and professional standards, either individually or together, conceivably might not merit an award of attorney fees, even if there is a successful outcome. *City of Wheat Ridge v. Cerveny, supra.*

■ However, our courts have not addressed whether fees paid to an attorney special advocate, which are not part of a contingency fee agreement or award, can be ordered to be refunded as punishment for the attorney's violation of ethical rules. Courts in some jurisdictions have stated that a complete denial or refund of attorney fees is appropriate when an attorney violates a rule of professional responsibility. *E.g., In re W. Office Partners, Ltd.,* 105 B.R. 631 (Bankr.D.Colo.1989) (denial of compensation for an attorney who was subject to conflicting interests reflects the practice prevalent in virtually all jurisdictions, citing *Woods v. City Nat'l Bank & Trust Co.,* 312 U.S. 262 at 268, 61 S.Ct. 493 at 497, 85 L.Ed. 820 (1941)); *In re Chou–Chen Chems., Inc.,* 31 B.R. 842 (Bankr.W.D.Ky.1983) (once a conflict of interest is shown, attorney fees should be entirely denied, even though the services rendered had intrinsic value and benefited the bankrupt estate); *In re 765 Assocs.,* 14 B.R. 449 (Bankr.D.Hawai'i 1981) (ordering a refund of fees already received by an attorney who was subject to a conflict of interest).

Other jurisdictions have stated that partial denial of compensation is more appropriate. *E.g., In re Watson Seafood & Poultry Co.,* 40 B.R. 436 (Bankr.E.D.N.C.1984)(allowing partial compensation despite failure to report a conflict of interest); *In re King Resources Co.,* 20 B.R. 191, (D.Colo.1982)(same).

Following the reasoning of these cases, we conclude that a court may order an attorney special advocate to refund his or her fees, in whole or in part, under its inherent powers as punishment for a violation of the Colorado Rules of Professional Conduct.

We now turn to the question of whether an attorney special advocate is subject to those rules. We conclude that the attorney, even if not practicing law in that role, is still subject to some of the Rules of Professional Conduct.

If a secondary occupation is "so law-related that the work of the lawyer in such occupation will involve, inseparably, the practice of law, the lawyer is considered to be engaged in the practice of law while conducting that occupation, and is subject to the standards of the bar." Colorado Bar Association Ethics Comm., Formal Op. 98, 372–73 (2004) (CBA Formal Op. 98). Generally, one who acts in a representative capacity in protecting, enforcing, or defending the legal rights and duties of another and in counseling, advising, and assisting that person in connection with those rights and duties is engaged in the practice of law. *Unauthorized Practice of Law Comm. v. Prog,* 761 P.2d 1111 (Colo.1988).

Under the former § 14–10–116, in effect during the proceedings here, a court could appoint a representative of the child, who was required to be an attorney, or a special advocate, who could be, but was not required to be, an attorney. The representative of the child was required to represent the best interests of the child and to participate actively in all aspects of the case, but could not testify as a witness. In contrast, the special advocate was required to investigate, report, and make recommendations on any issues affecting the best interests of the child. Further, the special advocate could be called as a witness regarding his or her recommendation.

CJD 97–02 set forth the duties for attorney special advocates. With respect to their duties, CJD 97–02 stated that attorney special advocates were appointed to investigate, formulate recommendations, and provide ac-

curate and current information to the court concerning a child's best interests. CJD 97–02 also stated that attorney special advocates appointed pursuant to the former § 14–10–116(2)(b) were to follow the specific terms of the order of appointment, which included the filing of a written report with the court.

The distinction between a representative of the child and a special advocate became more clear earlier this year when the General Assembly bifurcated § 14–10–116 into § 14–10–116 and § 14–10–116.5. While retaining the general description and responsibilities of the representative of the child, the General Assembly changed the nomenclature so that such person is now called "the legal representative of the child." At the same time, the General Assembly eliminated the phrase "special advocate," and in § 14–10–116.5 specified that the duties formerly undertaken by a special advocate are now filled by a "child and family investigator."

Thus, the new statutes make clear that a representative of the child represented the best interests of the child, while a special advocate was an investigator. This is confirmed by CJD 04–08, promulgated in 2004 before the most recent statutory amendments. CJD 04–08 established standards for special advocates. Significantly, standard 4 stated that "[t]he special advocate shall not . . . provide legal advice to any party or otherwise act as an attorney in the case . . . ."

Accordingly, because the duties of an attorney special advocate under CJD 97–02 did not include defending the legal rights or duties of another, or counseling that person regarding those rights and duties, we conclude that attorney special advocates under CJD 97–02 did not engage in the practice of law.

Nevertheless, attorney special advocates were still subject to those Rules of Professional Conduct which apply to attorneys regardless of whether or not they are practicing law. CBA Formal Op. 98.

■ Here, the court ordered Smith to refund the fees paid to her because of her admitted alterations of the dates on medical releases she sent to a medical professional. From the record before us, we cannot determine whether this conduct amounted to a violation of the applicable Rules of Professional Conduct.

■ Colo. RPC 8.4(c) states that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." Colo. RPC 8.4(c) applies to all lawyers at all times and therefore applies to attorney special advocates. *See* CBA Formal Op. 98.

■ Colo. RPC 5.3 states that a lawyer shall be responsible for the conduct of a nonlawyer assistant that violates the Rules of Professional Conduct if:

(1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or

(2) the lawyer is a partner in the law firm in which the person is employed, or has direct supervisory authority over the person and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

However, this rule only applies to lawyers who are engaged in the practice of law. Therefore, Colo. RPC 5.3 does not apply to attorney special advocates. *See* CBA Formal Op. 98.

Accordingly, we conclude that the court could only have ordered a refund of Smith's fees if it found that she altered the dates or caused them to be altered in violation of Colo. RPC 8.4(c). Here, the court's only basis for ordering a refund was that it had lost all confidence in her as a special advocate because of the altered dates on the medical releases. Furthermore, the court did not permit Smith to explain the circumstances surrounding the alterations.

Thus, we conclude that the trial court erred when it ordered Smith to refund her fees without determining whether her conduct violated Colo. RPC 8.4(c), and we remand for an evidentiary hearing at which Smith and other witnesses may testify as to the circumstances under which the dates were altered. On remand, the trial court must determine whether the medical releases

were changed in a manner that violated Colo. RPC 8.4(c), and what part, if any, of Smith's fees should be refunded in light of her allegation that only six of her fifty-one billable hours were spent on her report.

We also note that under the new Chief Justice Directive regarding attorney special advocates, CJD 04–06, complaints concerning alleged violations of the Colorado Rules of Professional Conduct by an attorney special advocate shall be reported, if possible, to the Office of the Child's Representative (OCR) so that the OCR may consider this information when deciding whether to continue to contract with the attorney, either at the time of the complaint or in the future. The OCR is charged with investigating complaints and reporting any violations of the Rules of Professional Conduct to the Colorado Supreme Court Office of Attorney Regulation Counsel, just as it could do under CJD 97–02. Additionally, CJD 04–06 notes that a court may similarly report alleged violations of the Rules of Professional Conduct, and that the complaint process "in no way interferes with the court's inherent powers to impose sanctions . . ."

## II. Refund to Bezdek

Smith contends that, even if the court orders a full refund of her fees, she is entitled to the portion paid by Bezdek under a quantum meruit theory, because he argued against the refund in his brief to the court. We disagree.

The trial court may, in its discretion, decide to order a refund of all fees paid to Smith if it finds that her conduct violated Colo. RPC 8.4(c). Whether Bezdek would agree is irrelevant because the refund would constitute a court-ordered sanction against Smith for professional misconduct.

## III. Other Grounds for Refund

Because Redmond did not raise this issue on appeal, we do not address whether her concerns about the quality of Smith's work as a special advocate would independently warrant a trial court order requiring Smith to refund all fees paid to her.

The trial court's order is vacated, and the case is remanded for an evidentiary hearing on the circumstances surrounding the alteration of the release dates and a determination as to how much, if any, of Smith's fees should be refunded to the parties.

Judge CARPARELLI and Judge HUME ** concur.