Cathy BERRA, Plaintiff–Appellee,

v.

SPRINGER AND STEINBERG,
P.C., Defendant–Appellant.

No. 08CA2503.

Colorado Court of Appeals,
Div. III.

Aug. 19, 2010.

As Modified on Denial of Rehearing
Sept. 23, 2010.

Ventola & Staggs, P.C., Samuel M. Ventola, Denver, Colorado, for Plaintiff–Appellee.

Springer and Steinberg, P.C., Michael P. Zwiebel, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge DAILEY.

In this attorney fees dispute, defendant, Springer and Steinberg, P.C. (S&S), appeals the trial court's judgment refunding to plaintiff, Cathy Berra, a portion of a previously paid contingent fee. We affirm.

### I. Background

After being injured in an automobile accident with George Wilkinson, Berra hired an attorney on a contingent fee basis to represent her in a civil action against Wilkinson. In 1998, Berra obtained a judgment against Wilkinson in the principal amount of $500,000, with interest accruing at a rate of twelve percent compounded annually. Berra's attorney duly recorded a judgment lien on Wilkinson's real property in Pitkin County.

The attorney informed Berra that collection on the judgment would be "very challenging" due to Wilkinson's recalcitrant attitude and his "reputation for delay." Following several unsuccessful attempts to enforce the judgment, the attorney withdrew as Berra's counsel but filed an attorney's lien against any recovery Berra might have on the Wilkinson judgment.

In 1999, Berra requested that S&S represent her in contesting the attorney's lien and collecting judgment against Wilkinson. S&S sent Berra a proposed contingent fee agree-

ment. Berra, who had worked as a senior legal assistant in a law office for a number of years, consulted with independent counsel regarding the fee agreement, and, after negotiating the contingency percentage down to thirty percent, accepted the agreement.

S&S successfully settled the attorney's lien claim for $60,000 but its collection efforts were, for a time, unsuccessful. When, in 2004, Berra's judgment lien was about to expire, S&S attempted, unsuccessfully, to revive it, and had to file a new judgment lien. As a result, Berra lost her earlier lien priority.[1]

In 2005, Wilkinson was diagnosed with a fatal illness and began negotiating the sale of his property to Pitkin County. When Wilkinson's attorneys advised the title company not to honor Berra's judgment lien, S&S filed several emergency motions and, after a contested hearing, obtained a court order requiring the title company to honor Berra's lien. The property eventually sold for an amount large enough to satisfy Berra's judgment in full. In late 2005, Berra received a grand total of $1,177,500.22, including $676,796.22 in interest, in satisfaction of her judgment. Pursuant to their contingent fee agreement, S&S received a fee of $353,250.07, which represented thirty percent of the recovery of the judgment and interest.

In time Berra came to believe that S&S's fee was unreasonable and excessive. Berra requested, and S & S provided, documentation of the hours billed on her case. S&S documented 209 hours expended on the case, and estimated that it had also spent an additional 50 to 100 undocumented hours.

Berra initiated this action against S & S, asserting claims for declaratory judgment, restitution of unjust enrichment and money had and received, and breach of contract. The trial court bifurcated the first two equitable claims from the third legal claim, and, as pertinent here, conducted a bench trial on the two equitable claims.

At the conclusion of the trial, the court found that, although collection from Wilkinson involved some risk,[2] and thus "was appropriate for a contingent fee agreement," the actual fee received by S&S was unreasonable and excessive. In analyzing the factors set forth in Colo. RPC 1.5, the court found that "a 30% contingent fee for a collection on a preexisting judgment was not typical," and that Berra's judgment was satisfied ultimately "not because of any substantial effort by S&S, but because of the fortuitous occurrence" of Wilkinson's decision to "sell his property for a price ... large enough to satisfy [Berra's] judgment, including accumulated interest." The trial court thus concluded that Berra was entitled to a refund of a portion of the contingent fee.

The court calculated the amount of Berra's refund by first determining, under a quantum meruit analysis, a reasonable amount of fees to which S&S was entitled (i.e., $167,500),[3] and then subtracting that number from the $353,250.07 contingent fee paid to S&S. Using this analysis, the court determined that Berra was entitled to a refund of $185,750.07, plus interest. The court reduced its determination to judgment and certified the judgment for immediate appeal under C.R.C.P. 54(b).

## II. Court's Determination of the Enforceability of the Contingent Fee Agreement

Initially, S & S contends that the trial court erred in determining the reasonable

1. S&S moved to revive the original judgment lien four months before it was to expire. Subsequently, however, the Pitkin County District Court determined, based on Wilkinson's testimony (but contrary to S&S's evidence), that Wilkinson had not timely been served by S&S. Consequently, the court vacated its original order reviving the judgment lien. On Berra's behalf, S&S appealed the district court's order but the appeal was dismissed as moot in light of subsequent events. *Berra-Aziz v. Wilkinson,* (Colo.App. No. 05CA1827, Jan. 19, 2006)(unpublished order dismissing appeal).

2. The risk, the court found, existed because "Wilkinson was an eccentric, as well as a scofflaw," and because the actual, unencumbered value of his real property was unknown.

3. The court arrived at this number by (1) multiplying the number of hours S&S documented times its hourly rate, to come up with a $67,000 "lodestar" amount for S&S's services; and (2) multiplying that lodestar amount by 2.5, to account for the "potential risk involved in [S&S's] representation."

value of its services under a quantum meruit analysis without first finding that the contingent fee agreement was invalid and unenforceable. We disagree.

■ Berra asserts that S&S failed to properly preserve this issue by way of a motion for directed verdict in the trial court. Initially, we observe that motions for directed verdict and for judgment notwithstanding the verdict are inapplicable in, as here, a bench trial. *See Frontier Exploration, Inc. v. Am. Nat'l Fire Ins. Co.*, 849 P.2d 887, 890 (Colo.App.1992). Further, to preserve the issue for appeal all that was needed was that the issue be brought to the attention of the trial court and that the court be given an opportunity to rule on it. *See, e.g., People v. Melendez*, 102 P.3d 315, 322 (Colo.2004) (no talismanic language is required to preserve an issue, so long as court is given an opportunity to rule).

The question is, then, whether S&S brought the issue to the attention of the trial court and gave the court an opportunity to rule on it.

On several occasions during closing argument, S&S asserted that the court was obliged to find the contingent fee unreasonable as a matter of law before it could independently assess what a reasonable fee would be.

■ Although S&S did not explicitly use the term "invalidity of contract," its arguments nonetheless sufficed to convey to the trial court the position that there had to be something wrong with the contingent fee agreement itself, such that it could not be enforced, before it could be disregarded in favor of a quantum meruit approach to determining S&S's entitlement to fees. Because S&S's closing argument essentially presented to the trial court the sum and substance of the argument it now makes on appeal, we consider that argument properly preserved for appellate review. *See People v. Silva*, 987 P.2d 909, 913 (Colo.App.1999) (presenting sum and substance of argument to trial court preserves argument for appellate review).

■ We agree with S&S that quantum meruit is a remedy available when a contract is found to be invalid or unenforceable. *See Mullens v. Hansel–Henderson*, 65 P.3d 992, 999 (Colo.2002) (recognizing (1) "When a contract fails, equity steps in to prevent one party from taking advantage of another. Quantum meruit, founded upon the principle of equity, exists to prevent unjust enrichment"; and, thus, (2) "[Q]uantum meruit is generally allowed for unenforceable fee agreements"); *Dudding v. Norton Frickey & Assocs.*, 11 P.3d 441, 445 (Colo.2000) ("[T]he equitable doctrine [of quantum meruit] seeks to restore fairness when a contract fails.").

■ We reject, however, S&S's assertion that the trial court did not find the contingent fee agreement invalid or unenforceable. In its order, the trial court specifically referenced *Anderson v. Kenelly*, 37 Colo.App. 217, 547 P.2d 260 (1975), a case S&S had characterized, during closing argument, as involving the question of whether to set aside a contingent fee agreement. Quoting from that case, the trial court acknowledged the duty of a court to "scrutinize contingent fee contracts" to "determine the reasonableness of the terms thereof." *Id.* at 218, 547 P.2d at 261. The court then evaluated the reasonableness of the fee agreement, in light of several factors, before concluding that the "contingency fee received by S&S is unreasonable and excessive." Under the circumstances, we interpret the court's conclusion that the "contingency fee received by S&S is unreasonable and excessive" as a determination that the contingent fee agreement was unenforceable.[4]

### III. Evaluating the Enforceability of the Fee Agreement

S&S contends that the trial court erred in evaluating the enforceability of the fee agreement when it considered factors relating to risk and difficulty of work in retrospect, rather than as they appeared at the outset of the case. According to S&S, courts and commentators have taken two general ap-

---

4. The court's determination in this regard is every bit as apparent to us as was the sum and substance of the argument S&S presented to the

trial court, which we hold was properly preserved for appellate review.

proaches to determining the validity of contingent fee contracts, that is, (1) determining whether the contingent fee contract was freely and fairly made in accord with ordinary contract law; or (2) determining whether a legitimate risk of nonrecovery existed *at the outset* to justify the contingent fee.

■ We reject the first approach because, under Colorado law, contingent fee agreements are not "ordinary" contracts. The Colorado Supreme Court has noted that there are "special considerations inherent in the attorney-client contractual relationship" that "distinguish[ ] the attorney-client relationship from other business relationships." *Dudding*, 11 P.3d at 445. Consequently, "[u]nder its general supervisory power over attorneys as officers of the court, a court may and should scrutinize contingent fee contracts and determine the reasonableness of their terms," apart from whether the contracts were fairly and freely entered into. *People v. Nutt*, 696 P.2d 242, 248 (Colo.1984); *see* Restatement (Third) of the Law Governing Lawyers § 34 cmt. b (2000) (Restatement of Lawyering) ("A client-lawyer fee arrangement will be set aside when its provisions are unreasonable as to the client.... Lawyers ... owe their clients greater duties than are owed under the general law of contracts."); 23 Richard A. Lord, *Williston on Contracts* § 62:4, at 295–97 (4th ed. 2002) ("Due to the special nature of a contingent fee contract, which gives an attorney an interest in the outcome of the litigation and is most susceptible to improper influence and duress, the courts will closely review them. In particular, they will scrutinize the agreement for reasonableness, paying special attention to the reasonableness of the fee.").

With respect to the second approach, S&S asserts that "enforceability of a contingent fee agreement is not determined by a post-hoc analysis of the value of the services rendered, but rather by reference to whether the contract was fairly entered into and reflects the risk of litigation as it appeared at the time the contract was made." Such a position, S&S says, "accords with public policy" because it "encourages contracts that permit a client without resources to seek redress" while recognizing that "attorneys must be compensated for bearing the risk that resources may be expended without any return."

We readily acknowledge that "[t]he whole point of contingent fees is to remove from the client's shoulders the risk of being out-of-pocket for attorney's fees upon a zero recovery. Instead, the lawyer assumes the risk, and is compensated for it by charging what is (in retrospect) a premium rate." 1 Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering* § 8.6, 8–15 (3d ed. 2010); *see also Brody v. Hellman*, 167 P.3d 192, 201 (Colo.App.2007) ("The size of the contingent fee is designed to be greater than the reasonable value of the services, or the hours worked multiplied by the hourly rate, to reflect the fact that attorneys will realize no return for their investment of time and expenses in cases they lose."); Restatement of Lawyering § 35 cmt. c ("[a] contingent fee may permissibly be greater than what an hourly fee lawyer of similar qualifications would receive for the same representation," because "[a] contingent-fee lawyer bears the risk of receiving no pay if the client loses and is entitled to compensation for bearing that risk").

■ However, that does not mean that the reasonableness of a contingent fee agreement is assessed only in light of the circumstances existing at the time the agreement was entered into. Our cases recognize that, "[w]hen reviewing contingency fee agreements for reasonableness under their inherent powers, [our courts] have tested the contracts against the quantum meruit standard," *In re Marriage of Redmond*, 131 P.3d 1167, 1170 (Colo.App.2005), and determined whether the "services to be performed were reasonably worth the amount stated in the agreement," by considering the "amount of time spent, the novelty of the questions of law, and the risk of non-recovery to the client and attorney." *Nutt*, 696 P.2d at 248.

To the extent S&S asserts that the principles upon which those cases were analyzed are outdated, we disagree.

■ "Whether or not the terms of a contingent fee agreement are enforceable is controlled by Chapter 23.3 of [the] Colorado

Rules of Civil Procedure [Rules Governing Contingent Fees]." *Mullens,* 65 P.3d at 995. As pertinent here, C.R.C.P. Chapter 23.3 Rule 3(d) provides that "[n]o contingent fee agreement shall be made ... if it is unconscionable, unreasonable, and unfair." Rule 2 provides that, in reviewing disputed contingent fee agreements, the Colorado Rules of Professional Conduct may be considered.

Rule 1.5 of the Colorado Rules of Professional Conduct provides that a lawyer shall not "collect an unreasonable fee," and it sets forth the following factors, as bearing on the reasonableness of fee arrangements:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

Colo. RPC 1.5(a).

Other jurisdictions use these or similar factors in evaluating the reasonableness of a contingent fee agreement. *See* Hazard & Hodes, *The Law of Lawyering* § 8.12, at 8–28 ("The fee must also be reasonable under Model Rule [of Professional Conduct] 1.5(a)."); *see also In re Conservatorship of Fallers,* 181 Ariz. 227, 889 P.2d 20, 21–24 (Ariz.Ct.App.1994) (applying Arizona's version of Colo. RPC 1.5(a) in assessing the reasonableness of a contingent fee agreement); *In re Succession of Bankston,* 844 So.2d 61, 64–65 (La.Ct.App.2003) (in assessing reasonableness of contingent fee, "all factors set forth under Rule 1.5 must be considered"); *Attorney Grievance Comm'n*

*v. Pennington,* 355 Md. 61, 733 A.2d 1029, 1036 (1999) ("the question of the reasonableness of a contingent fee agreement, or one with contingent features, must be revisited after the fee is quantified or quantifiable and tested by the factors enumerated in" disciplinary rule requiring that attorney fees be reasonable); *Hauptman, O'Brien, Wolf & Lathrop, P.C. v. Turco,* 273 Neb. 924, 735 N.W.2d 368, 375 (2007) (Gerrard, J., concurring) ("A lawyer can establish the extent and value of his or her services in a contingency fee case by producing evidence showing, for example, the results obtained, the quality of the work, and whether the lawyer's efforts substantially contributed to the result. We have also identified other factors relevant to the reasonableness of a contingency fee, such as the time and labor required, the novelty and difficulty of the legal issues involved, the skill required to do the work properly, and the experience, reputation, and ability of the lawyer performing the services." (footnote omitted)).

By their very nature, several of these factors can apply only by virtue of events occurring *after* the execution of a fee agreement. As noted by one set of commentators: "[C]ourts often scrutinize the dollar amount of the fee actually generated for reasonableness. Because the dollar amount yielded by a contingent fee formula cannot be determined until after the fact, when the contingency has been satisfied, this of necessity requires considering developments occurring after the agreement was entered into." Hazard & Hodes, *The Law of Lawyering* § 8.6, at 8–15.

As to those developments, the question becomes "was there a subsequent change in circumstances that made the fee contract unreasonable?":

Although reasonableness is usually assessed as of the time the contract was entered into, later events might be relevant. Some fee contracts make the fee turn on later events.... [E]vents not known or contemplated when the contract was made can render the contract unreasonably favorable to the lawyer or, occasionally, to the client.

Restatement of Lawyering § 34 cmt. c & reporter's n.; *see Pennington,* 733 A.2d at 1036 ("an agreement, reasonable when made, may become unreasonable in light of changed facts and circumstances").

 "[L]arge [contingent] fees unearned by either effort or a significant period of risk are unreasonable." Restatement of Lawyering § 35 cmt. c. In assessing a lawyer's risk, two kinds of cases in particular will produce an unreasonable contingent fee: those in which, either from the outset or as a result of subsequent events, (1) "there was a high likelihood of substantial recovery by trial or settlement, so that the lawyer bore little risk of nonpayment"; and (2) "the client's recovery was likely to be so large that the lawyer's fee would clearly exceed the sum appropriate to pay for services performed and risks assumed." Restatement of Lawyering § 35 cmt. c; *see Jacobsen v. Oliver,* 555 F.Supp.2d 72, 84 (D.D.C.2008).

In *Anderson,* the plaintiff sought to collect insurance proceeds in connection with the accidental death of her husband. The pertinent policy provided that accidental death coverage would continue for a period of thirty-one days after enlistment in military service. The plaintiff recalled the date of her husband's enlistment as thirty-two days prior to his death, when, in reality, he had enlisted only thirty days prior to his death. Proceeding on the assumption that the husband had died outside the thirty-one-day period, the plaintiff engaged an attorney's services, on a one-third contingency basis, to pursue recovery of the proceeds. Upon starting negotiations with the insurance company, the attorney immediately discovered the correct date of the husband's enlistment, and within a week thereafter, had recovered from the insurance company the amount due under the policy (i.e., $26,373), of which he retained for himself one-third (i.e., $8791.08). The plaintiff persuaded a trial court to set aside the contingent fee contract.

On appeal, a division of this court affirmed the trial court's decision, finding,

Here, the "dispute" over payment of the insurance proceeds was caused by confusion concerning the date of the husband's enlistment. Little skill or effort was required to obtain the correct information. Had the parties been aware of the correct date of enlistment, it is unlikely that the contingent fee contract would even have been considered, much less agreed to. When this error became apparent to the attorney, and he saw that the express language of the insurance policy mandated payment, and when such payment was immediately forthcoming, his proper course of action would have been to reduce his fee. Faced with his failure so to do, the trial court properly reviewed this contract and determined from the evidence that it was "unconscionable, unreasonable, and unfair," and reduced the fee.

*Anderson,* 37 Colo.App. at 218–19, 547 P.2d at 261.

At least one authority has cited *Anderson* in support of the proposition that developments occurring after the formation of a contingent fee agreement can impact the enforceability of the agreement. *See* Restatement of Lawyering § 34 cmt. c reporter's n. (citing *Anderson* as a case where "lawyer learned that insurance company's refusal to pay was based on readily demonstrable factual error").

For all of the above reasons, we conclude that the trial court did not err in taking into consideration events which occurred after the parties entered into the fee agreement—such as the amount involved and the results obtained by S&S—to determine the enforceability of the agreement.[5]

### IV. Trial Court's Analysis

S&S also contends that the court erred in failing to base its quantum meruit analysis solely on the circumstances existing at the time of the contract. Because this is but another way of arguing the point addressed

---

**5.** We do not, however, include in the category of subsequent events rendering a fee unreasonable those events which, *because of the lawyer's actions,* increase the likelihood of recovery or reduce the risk of nonpayment. A lawyer should not, for example, lose his or her agreed-upon contingent fee because the desired result was, somewhat unexpectedly, more expeditiously accomplished as a result of his or her skill and efforts.

in part III of this opinion, we reject it. Further, contrary to S&S's other assertions, we perceive no error in the trial court's quantum meruit analysis.

We review de novo the court's application of the governing legal standards, but defer to the court's credibility determinations and will disturb its findings of fact only if they are clearly erroneous and not supported by the record. *Lawry v. Palm*, 192 P.3d 550, 558 (Colo.App.2008).

Here, applying the criteria set forth in Colo. RPC 1.5, the trial court concluded that "the contingency fee received by S & S in this case is unreasonable and excessive." In support of this conclusion, the court found, as a matter of fact:

- This case was not particularly difficult or novel, and, "at base, [was] a simple collection action, governed by very clear rules, statutes and case law."
- "[A] 30% contingent fee for a collection action on a preexisting judgment [is] not typical."
- The judgment was satisfied "not because of any substantial effort by S & S, but because of the fortuitous occurrence of Wilkinson's illness, which caused him to sell his property for a price that was large enough to satisfy [Berra's] judgment, including accumulated interest."

Each of these findings is supported by the record. At trial, Berra's expert testified that, even in light of Wilkinson's peculiarities, this was "a simple civil procedure matter." The same expert opined that "in a case where the judgment is preexisting ... [a thirty percent contingent fee] is out of the norm" and that Berra's judgment was satisfied "not by virtue of the work that the lawyers did" but "because [Wilkinson] developed cancer and decided he had to sell the property for his own personal reasons."[6]

The evidence and the court's findings support the conclusion that the contingent fee agreement here was unenforceable: although S&S had settled the attorney's lien claim, the main issue was the collection of the judgment

against Wilkinson; the risk to Berra and S&S of non-recovery against Wilkinson was not substantial given the actual value of Wilkinson's real property; the agreed-upon fee percentage was not within the range commonly charged by other lawyers in similar representations; and the size and, indeed, fact of Berra's recovery ultimately had little to do with S&S's efforts. *See, e.g., Jacobsen*, 555 F.Supp.2d at 84. Under these circumstances, the trial court correctly concluded that the fee S&S charged Berra was unreasonable and excessive. *See* Restatement of Lawyering § 35 cmt. c ("large fees unearned by either effort or a significant period of risk are unreasonable").

Finally, as to the amount of fees found by the trial court to be due S&S, we perceive no abuse of discretion in the court's determination based on its evaluation of Colo. RPC 1.5(a) factors.

Accordingly, the judgment is affirmed.

JUDGE ROY and JUDGE RICHMAN concur.

---

**6.** Although S&S presented expert testimony to the contrary, the court found Berra's expert more credible on these matters.