24CA0004 Susan Flynn v Scott 03-06-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0004
Pitkin County District Court No. 22CV30105
Honorable Christopher G. Seldin, Judge

Susan D. Flynn Revocable Trust,

Plaintiff-Appellee,

v.

Joseph Arnold Scott,

Defendant-Appellant.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE BROWN
J. Jones and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 6, 2025

Ferguson Schindler Law Firm, P.C., Mathew C. Ferguson, Lyndsey R. Pere, Aspen, Colorado, for Plaintiff-Appellee

Wegener Lane & Evans, P.C., Meaghan E. Fischer, Golden, Colorado, Defendant-Appellant

¶ 1      This matter arises out of a residential lease dispute between defendant, Joseph Arnold Scott, and his landlord, plaintiff, Susan D. Flynn Revocable Trust (Landlord). Scott appeals the district court's judgment in favor of Landlord on Scott's counterclaims relating to Landlord's breach of the warranty of habitability. Because we agree with the division's decision in *Anderson v. Shorter Arms Investors, LLC*, 2023 COA 71, and conclude that Scott failed to properly preserve the balance of his contentions for appeal, we affirm the district court's judgment. We remand the case to the district court to determine the amount of reasonable appellate attorney fees to be awarded to Landlord.

## I. Background

¶ 2      Beginning in September 2021, Scott leased a residence from Landlord in Snowmass Village, Colorado. On July 18, 2022, Scott discovered a minor water leak in an upstairs toilet tank; water had drained down into the ceiling of the den below. Landlord's property manager immediately hired a plumber to fix the leak and subsequently retained a remediation company to address the water damage.

¶ 3     Although the remediation company had completed its work by late August, Scott remained concerned about the possible presence of mold and elevated moisture levels in the residence and hired his own expert consultant to investigate.  As a result of his concerns, Scott also stopped paying rent for August and September.  Scott's consultant found no evidence of mold in the residence.  Nonetheless, on September 21, Scott's real estate broker notified Landlord that Scott "needs to move out of the property" because "there is still a high level of moisture in the house and standing water in the basement which will exacerbate [Scott's] health conditions and interfere with his health and safety."

¶ 4     In November, Landlord filed its complaint against Scott, asserting claims for (1) breach of the lease and (2) breach of the implied covenant of good faith and fair dealing.  Scott filed an answer denying Landlord's claims and asserted counterclaims for (1) breach of contract and (2) violation of the warranty of habitability under section 38-12-503, C.R.S. 2019.[1]

---

[1] Section 38-12-503, C.R.S. 2019, was in effect at the time of the events at issue, and we refer to that version throughout this opinion.  The statute has since been amended.

¶ 5    After a two-day bench trial in November 2023, the district court concluded that Scott had breached the lease and that his warranty of habitability counterclaim failed because he had not provided Landlord permission to enter the property to make repairs as required by section 38-12-503. The court entered judgment in favor of Landlord on its claim for breach of the lease and against Scott on his counterclaims. Scott appeals the court's judgment on his counterclaim for breach of the warranty of habitability.

## II.    Scott's *Anderson* Contentions

¶ 6    In rejecting Scott's counterclaim for breach of the warranty of habitability, the district court relied on *Anderson*, 2023 COA 71, which held that, for conditions falling within the statutory definition of "uninhabitable," the tenant must provide "reasonably complete written or electronic notice" that includes "permission to the landlord or to the landlord's authorized agent to enter the residential premises." *Id.* at ¶ 9 (quoting § 38-12-503(2)(b)). As relevant here, a residence is "deemed uninhabitable if . . . [t]here is mold that is associated with dampness, or there is any other condition causing the residential premises to be damp, which condition, if not remedied, would materially interfere with the

3

health or safety of the tenant." § 38-12-505(1)(a), C.R.S. 2024. The *Anderson* division also held that the statute requires strict compliance with the notice requirements. *Anderson*, ¶ 17.

¶ 7     On appeal, Scott contends that the district court erred by relying on *Anderson* because that case was wrongly decided. Specifically, he contends that *Anderson* incorrectly determined that strict compliance with the statute's notice provisions is required. Instead, he advocates for a substantial compliance standard, emphasizing that this standard is consistent with the statute's purpose to improve the quality of housing. He also contends that *Anderson* incorrectly held that notice of mold conditions must include permission for the landlord to enter the premises under section 38-12-503(2)(b)(II). Instead, he argues that section 38-12-503(2.2) applies to mold conditions and does not require permission to enter.

¶ 8     Alternatively, Scott contends that the court erred by incorrectly applying *Anderson* to his counterclaim. Specifically, he argues that because the mold "materially interfere[d] with [his] life, health, or safety," he was not obligated to provide contemporaneous permission for Landlord to enter the property. § 38-12-503(2)(a)(II),

4

(b)(I). He also argues that, because the lease agreement granted Landlord the right to enter the premises, he did not need to give additional permission along with his notice of the mold condition. *See Anderson*, ¶¶ 72-75 (Schutz, J., dissenting) (concluding that a lease provision authorizing the landlord to enter the premises satisfied the requirement in section 38-12-503(2)(b)(II) that the tenant provide permission to enter "with the notice").

¶ 9 As evidence of preservation, Scott points to an exchange that took place between the district court and his counsel at the end of trial. Following Landlord's counsel's closing argument, which addressed Scott's failure to provide the requisite statutory notice to support his claim for breach of the warranty of habitability, the court turned to Scott's counsel and explained that its "reading of [*Anderson*] is that in order to essentially activate the . . . statutory machinery in the implied warranty of habitability, you have to send the proper notice." The court asked Scott's counsel to "point [it] to a notice that . . . specifically gives landlord permission to enter to remediate the hazard claims." Scott's counsel responded that the notice the court was looking for did not exist.

¶ 10    Counsel argued only that "the *Anderson* case was published in 2023[,] and it is a matter of first impression for the court," adding that Scott "didn't know" of the statutory notice requirements addressed in *Anderson.* The court explained that it did not "possess the discretion to ignore a ruling of the Court of Appeals that is on point" and concluded that the claim failed "given the lack of proper notice." But the court did not "want to preclude [counsel] from making a record for appeal," noting that *Anderson* may not have been reviewed yet by the Colorado Supreme Court. So the court asked Scott's counsel, "Anymore record you want to make on that?" Scott's counsel simply responded, "Not on that issue, Your Honor."

¶ 11    An issue is preserved for appeal when it is brought to the court's attention, and the court has an opportunity to rule on it. *In re Marriage of Turilli*, 2021 COA 151, ¶ 12. Preservation does not require that a party use talismanic language, *In re Estate of Owens*, 2017 COA 53, ¶ 21, but it does require that a party present the "sum and substance of the argument it now makes on appeal" to the trial court, *Berra v. Springer & Steinberg, P.C.*, 251 P.3d 567, 570 (Colo. App. 2010) (citing *People v. Silva*, 987 P.2d 909, 913 (Colo. App. 1999)).

6

¶ 12 Although the district court confronted Scott's counsel with *Anderson* and provided her ample opportunity to develop a record for appeal, Scott's counsel did not argue that (1) the condition about which Scott complained did not require notice that included permission to enter because it fell under section 38-12-503(2)(b)(I), a different provision of the statute than the one analyzed in *Anderson*; or (2) Scott did not have to give permission to enter with the notice because the parties' lease agreement already provided the requisite permission. Counsel's arguments that *Anderson* addressed "a matter of first impression" and that Scott was unaware of how *Anderson* interpreted the statute's notice requirements did not present the court with an opportunity to consider or rule on the issues Scott now raises on appeal. *See Berra*, 251 P.3d at 570. Nor has Scott pointed us to any exception to the preservation requirements that would enable us to reach the merits of his contentions. As a result, we conclude that these issues were not preserved, and we decline to address them further. *See Gestner v. Gestner*, 2024 COA 55, ¶ 18 ("[I]ssues not raised in or decided by the district court generally will not be addressed for the first time on appeal.").

¶ 13 However, with respect to Scott's contentions that (1) *Anderson* was wrongly decided because (a) strict compliance with the statute's notice requirement should not be required, or (b) permission to enter is not required for notice of mold conditions, which is governed only by section 38-12-503(2.2), we are not convinced that Scott had to preserve such contentions because the district court was bound to follow *Anderson* and any argument to the contrary would have been futile. *See, e.g., M.T. v. Superior Ct.*, 101 Cal. Rptr. 3d 183, 188 (Ct. App. 2009) (failing to make a futile objection does not constitute waiver). Even so, we see no reason to depart from *Anderson*.

¶ 14 As *Anderson* explained, strict compliance with the notice requirement in section 38-12-503(2)(b) is necessary because the required notice is "not merely a . . . precondition for filing a claim for breach of warranty" but "is an element that must be established before a landlord can be found liable for breaching the warranty." *Anderson*, ¶ 17; *see* § 38-12-503(2) (a landlord breaches the warranty of habitability "if . . . [t]he landlord has received reasonably complete written or electronic notice of the condition" and fails to rectify the condition within the statutory timeframes).

We also agree with *Anderson* that section 38-12-503(2)(b)(II) applies to conditions falling within the statutory definition of "uninhabitable," § 38-12-503(2)(a)(I), which include conditions relating to "mold that is associated with dampness," § 38-12-505(1)(a); *Anderson,* ¶¶ 9, 28. For its part, section 38-12-503(2.2) "simply lays out with greater specificity what a landlord is required to do upon being notified of a mold problem"; it does not set different requirements for notice related to mold conditions. *Anderson,* ¶ 27.

¶ 15 Because *Anderson* was not wrongly decided, Scott's contentions fail. Even though the allegedly uninhabitable condition was related to mold, Scott was required to strictly comply with the notice requirements in section 38-12-503(2)(b)(II) and provide Landlord permission to enter the property.

## III. Landlord's Improper Cross-Appeal

¶ 16 We note that Landlord's briefs in this matter include cross-appeal arguments. Because Landlord failed to file a notice of cross-appeal, however, these arguments were struck by a prior order of this court. *See Leverage Leasing Co. v. Smith,* 143 P.3d 1164, 1167-68 (Colo. App. 2006) ("In general, an appellee must file

9

a cross-appeal before the appellate court may consider an alleged trial court error that prejudiced the appellee"; the appellee may "not seek to increase its rights under the judgment" without filing a cross-appeal.).

### IV. Request for Appellate Attorney Fees and Costs

¶ 17 Both parties have requested appellate attorney fees pursuant to a provision of the lease that provides as follows: "In the event of any dispute, arbitration, or litigation between Landlord and Tenant arising out of or in any way related to this Agreement, the prevailing party shall be entitled to recover its costs and reasonable attorneys' fees from the non-prevailing party."

¶ 18 Because Landlord is the prevailing party in this appeal, we award it reasonable appellate attorney fees. *See* C.A.R. 39.1. We remand the case to the district court to determine the amount of fees to award to Landlord, which should be reduced by any time spent on the "cross-appeal" arguments that were not properly before us. Landlord is also entitled to appellate costs. C.A.R. 39.

## V.    Disposition

¶ 19    We affirm the district court's judgment and remand for the court to determine the amount of reasonable appellate attorney fees to be awarded to Landlord.

JUDGE J. JONES and JUDGE YUN concur.